BORNEMANN, Respondent, vs. LUSHA and others, Appellants.
LUSHA, Appellant, vs. BORNEMANN and others, Respondents.

*April 1—April 28, 1936.*

For the appellants there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie.*

For the respondents there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *A. D. Parnell.*

FRITZ, J. The judgments appealed from were based upon certain undisputed facts and certain other facts found in a special verdict of a jury. In that verdict the court directed a finding that James H. Lusha, through his employees, was negligent in parking or leaving his truck standing upon the

highway when it was practical to park or leave it standing off the roadway, and that Bornemann's injury was a result of that negligence; and that, on the other hand, Bornemann was negligent in failing to keep a sufficient lookout and sufficient control of his car, and that his injury was the result of his negligence in those respects. In addition the jury found, on issues submitted by the court to the jury, that Lusha, through his employees, was negligent in permitting his truck to stand upon the traveled portion of the highway without being protected by burning flares, and in failing to have proper lights on the rear of the truck, and that Bornemann's injury was a result of the negligence in those respects; that Bornemann was negligent in operating his automobile at an excessive rate of speed, and that negligence was a cause of his injury; and that the damages, sustained by Bornemann and by Lusha, respectively, were the result of eighty per cent of causal negligence attributable to the latter and twenty per cent of causal negligence attributable to the former.

Appellant's first and second assignments of error are that the court erred, (1) "in answering the question in the verdict as to Lusha's negligence in failing to put out flares, there being a conflict in the testimony as to the time and opportunity to set them out;" and (2) "in finding as a matter of law that failing to set out the flares was a cause of the accident, for in all probability the accident would have occurred even had the flares been set, and the court invaded the province of the jury in answering the question." In passing upon those assignments of error there must be taken into consideration the following facts which appear either by admissions in the pleadings or undisputed evidence, or by giving to the evidence in dispute the construction most favorable to the appellants that is possible: The collision occurred shortly after midnight on September 23, 1934, on State Trunk Highway No. 57, three hundred or four hundred feet north of its intersection with Highway No. 114. The right front

portion of a Chevrolet sedan, which Bornemann was driving northward on the east half of the eighteen feet wide concrete roadway of Highway No. 57, collided with the left rear corner of the defendant Lusha's trailer, which was attached to a large tractor. The tractor, with the trailer attached, had been driven north on Highway No. 57 from a place fourteen miles south of the intersection with Highway No. 114, by the defendant Brotski; and Merton Lusha, who was likewise an employee of the defendant, James H. Lusha, was with Brotski in the cab of the tractor as the alternate driver from Chicago to Green Bay. The tractor had four wheels, the rear ones being dual wheels, with two tires on each wheel. The trailer, which had rear wheels only, was seven feet wide, six feet high, and eighteen feet long, and was loaded with a ton of freight. The trailer and load combined weighed about four tons, without the tractor. When the tractor, while traveling north on the concrete roadway of Highway No. 57, was fifty to one hundred fifty feet south of the intersection with Highway No. 114, it lost its right rear wheel and tires and its right rear axle and brake drum dropped to the concrete roadway. In that condition the tractor and trailer coasted five hundred eighty to six hundred eighty feet northward on that roadway. Just before they came to a standstill, Brotski turned the tractor so that upon stopping it stood one or two feet east of the center line, and the right rear wheels of the trailer were either one or two feet off of the concrete roadway, or just touched the edge thereof. Upon stopping, Brotski and Merton Lusha walked from the cab around the rear of the trailer, and then observed that a northbound truck was approaching. Thereupon, Lusha walked around to twenty-five or thirty feet north of the tractor and stood there to flag the approaching northbound truck, in order to ride to Hilbert, the nearest town, to procure help. A minute or two elapsed between the stopping of the tractor and the

boarding of that northbound truck by Lusha. While Lusha walked to the north of the tractor, Brotski was not doing anything; but after Lusha left, Brotski returned to the cab to look for a flashlight to enable him to find some flares which he testified were in the cab. He had found the flashlight but not the flares when Bornemann crashed into the rear of the trailer, five or six minutes after the tractor had stopped. The rear of the trailer was equipped with a taillight, clearance lights, a bar of lights across the top, and a colored reflector signal at each side. There was a decided conflict in the testimony as to whether those rear lights were lit when Bornemann collided with the trailer; but as, in determining whether the court was warranted in directing findings adverse to the defendants, the evidence must be given the most favorable construction to the defendants that it admits of (*Rusch v. Sentinel-News Co.* 212 Wis. 530, 533, 250 N. W. 405), we must assume that those lights were lit as the defendants contend. In view of all of those facts, and particularly the undisputed evidence that at least five or six minutes had elapsed between the stopping of the tractor and the time of the collision without the placing of any light in compliance with sec. 85.06 (2) (d), Stats., to the rear of the trailer, the court was warranted in directing the finding that the defendant Lusha, through his employees, was negligent in permitting the trailer to stand upon the traveled portion of the highway without being protected by burning flares. Sec. 85.06 (2) (d), Stats., provides:

"No person shall, during any period of time from one-half hour after sunset to one-half hour before sunrise, permit a motor truck, truck tractor, trailer or semitrailer to stand upon any traveled portion of a highway outside of the corporate limits of any incorporated city or village, unless such vehicle is protected by a burning fusee placed on the extreme left side of the vehicle, or by lights placed approximately one hundred twenty-five feet to the front and rear of the vehicle,

to clearly indicate the presence of such vehicle. Such fusees or lights shall be kept burning the entire time such vehicle is left standing. Every such vehicle operated on the highways shall be provided at all times with the fusees or other lights required to comply with this subsection."

That statute is a very important and salutary enactment for the purpose of avoiding one of the most serious menaces that have at times confronted motorists upon the public highways. Some of the most deplorable collisions and shocking consequences involved in cases reviewed by this court were due to leaving a motor truck standing upon the traveled portion of a highway in the dark without some such adequate warning lights as are now prescribed by that statute for the protection of approaching motorists. In applying that statute the operator of the standing vehicle must, of course, be allowed sufficient time to enable him to place the prescribed fusee or lights. However, in this case, two of defendant's employees were at hand and in charge of the outfit, and at least five or six minutes elapsed between the stopping thereof and the collision. The outfit was not upset or otherwise damaged upon the right rear wheel dropping off, and neither of defendant's employees was injured or incapacitated in any manner. It certainly did not require more than a minute for them to dismount and ascertain that the trailer was standing upon the highway. In fact, within a minute or two Brotski and Lusha had done not only that and observed the northbound truck approaching, but the latter had also returned to a point twenty-five feet ahead of the tractor and from there flagged and boarded that truck to go to Hilbert. Certainly, at least immediately after seeing that the rear of the trailer was on the concrete roadway, Lusha's and Brotski's first duty was to place lights as required by sec. 85.06 (2) (d), Stats. Prompt compliance in that respect was much more essential at that time, than it was for Lusha to go to Hilbert for assistance. There was no safety statute, or rule of law

that imposed any duty in the latter respect upon him or his employer; and there is no justification for his leaving for help instead of remaining to help Brotski until they had performed their first and most important duty of placing the lights required by sec. 85.06 (2) (d), Stats. With two of the defendant Lusha's employees at hand, who were not incapacitated and who were familiar with the tractor and its equipment, reasonably prompt action on their part would certainly have enabled them to place a required light one hundred twenty-five feet to the rear as well as to the front of the outfit prior to the collision, if the vehicle was provided with such lights as are required by the statute; and, as the trailer was standing upon the east half of the traveled portion of the highway and solely in the pathway of northbound automobiles approaching from the rear of the trailer, it would seem that the first light which they should have placed would be the one to the rear. It follows, consequently, that the court did not err in directing the finding that the defendant Lusha, through his employees, was negligent in leaving the trailer standing upon the traveled roadway without placing a light to the rear thereof in time to avoid the collision.

However, there is evidence which necessitates the conclusion that the court erred in also holding that the failure to place such a light was a cause of plaintiff's injury as a matter of law. Although under the evidence the jury could have found that that failure was such a cause, it was not so conclusively to that effect, that the court was warranted in taking that issue from the jury, in view of the factual situation. Under the evidence, the plaintiff, as the court rightly directed, was negligent in failing to keep a sufficient lookout, and also sufficient control of his car; and his negligence in those respects was a cause of his injury. The headlights on his automobile were lit, and enabled him to see two hundred feet ahead, under the existing conditions. Therefore, if he had kept the lookout which he could and should have kept

in the exercise of ordinary care, he could and should have observed the stalled trailer even if it had no rear lights or reflector signals at all. In view of those circumstances and conclusions, it does not necessarily follow that the plaintiff would have observed a light placed to the rear of the trailer in compliance with the statute; and, consequently, the court was not warranted in holding, as a matter of law, that the failure to place such a light was a cause of the collision. Although such a light, if properly placed, would probably have given the plaintiff a better opportunity to discover the presence of the trailer, it does not follow conclusively that his causal negligence in failing to keep proper control of his car and a sufficient lookout to discover the trailer in time to avoid the collision, would not also have caused him to fail to observe a properly placed warning light in time to avoid the collision. Consequently, the issue as to whether the negligence of Lusha's employees in failing to place such lights was a cause of the collision should have been submitted to the jury, and the court's error in directing the finding on that subject necessitates a reversal of the judgments under review.

Another assignment of error is that "the court erred in submitting a question on Lusha's negligence as to leaving his car standing on the traveled portion of the highway, contrary to statute, because it was undisputed that the truck was disabled and could not be moved after it stopped, hence the statutory prohibition against leaving the car standing on the highway did not apply." The statutory provisions referred to in that assignment are subs. (1) and (8) of sec. 85.19, Stats. Sub. (1) provides:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop or leave standing any vehicle, whether attended or unattended,

upon any highway unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction along such highway."

Defendants contend that the tractor became so disabled that it was impossible to move it and the trailer off the roadway so as to avoid violating those provisions; and that, therefore, the leaving the outfit on the roadway was excusable in law under sub. (8) of sec. 85.19, Stats., which provides that:

"The provisions of this section shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

A review of the evidence discloses that whether or not it was "impossible to avoid stopping or temporarily leaving such vehicle in such position" on the concrete roadway upon the tractor becoming disabled was a jury issue because of testimony to the following effect: Although the right rear wheel and tires came off fifty to one hundred fifty feet south of the intersection of Highways Nos. 57 and 114, the tractor did not come to a stop until it was three hundred to four hundred feet north of that intersection, which in turn was two hundred thirty-six feet wide (and barricaded at the time for one hundred ten feet with flares set along side of it). Consequently, the outfit traveled a total distance of five hundred eighty to seven hundred eighty feet after the wheel and tires came off. While it traveled that distance with the right rear axle and brake drum dragging on the concrete roadway of Highway No. 57, neither Lusha nor Brotski looked for a place, or made any effort to stop off that roadway or to turn east or west at that intersection. Likewise, although both of them knew that the seven feet wide travelable shoulder on

the right side of that roadway was hard and grown with grass, they made no attempt while coasting that distance of five hundred eighty to seven hundred eighty feet to turn or maneuver the vehicle on to that shoulder. Their only excuse for not even attempting to leave the traveled roadway was that they were afraid the dragging brake drum and axle might cause the outfit to "jack-knife" and upset the trailer. It may be true that if the jury had believed, under all the evidence, that there was danger of such an upset, that might have caused the jury to find that it was not practical to turn off the concrete and that it was therefore impossible to avoid stopping on that roadway. However, in view of all of the facts and circumstances, the court would not have been warranted in holding that the evidence conclusively established that while the vehicle coasted five hundred eighty feet, at the least, with the brake drum and axle dragging on the concrete, it was impractical to move the vehicle on to the shoulder or the concrete at the intersection alongside of the traveled roadway of Highway No. 57, and that it was impossible to avoid stopping on that traveled roadway. On the contrary, in that respect, there was clearly an issue for the jury.

As there must be a reversal of the judgments for reasons stated above, no purpose will be served by discussing appellant's assignment of error in relation to the jury's findings as to comparative negligence.

*By the Court.*—Judgments reversed, and causes remanded with directions to enter an order in each action, granting a new trial.