POOLE, Plaintiff and Respondent, vs. HOUCK and another, Appellants: MILWAUKEE AUTOMOBILE INSURANCE COMPANY, Interpleaded Defendant and Respondent.

*May 14—June 10, 1947.*

652

For the appellants there was a brief by *Van R. Coppernoll* of Richland Center, attorney for Nelson Houck, and by *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *Arthur Wickham* of Milwaukee of counsel, and oral argument by *Mr. Wickham* and *Mr. Coppernoll.*

*Franklin E. Fogo* of Richland Center, for the respondent Marion Poole, and *Francis L. Brewer* of Richland Center, for the respondent Milwaukee Automobile Insurance Company.

FAIRCHILD, J.   To understand how the collision upon which this litigation is based occurred, it is well to review events concerning an accident which happened at the same place about a half-hour before the collision out of which this action arises.   The previous accident occurred when a car driven by one Peckham and the car belonging to defendant Houck were traveling west in the north lane of Highway 14. Houck ran into the Peckham car in such a way as to hook the front bumper of his car to the rear bumper of the Peckham car. While those two cars were consequently stalled in the north lane with about twelve feet in the clear on the south for the passage of other vehicles, the sheriff and his deputy approached the scene from the west.   The sheriff parked his car on the south side of the road, about seventy-five feet west of the Peckham and Houck cars.   When he crossed the road to investigate matters, the sheriff found that Houck was intoxicated, so he put Houck under arrest and removed him to his, the sheriff's, car.

In the meantime others had come to the scene of the collision.   Among them was one, Rumboldt, who parked his car to the south and a little ahead of the sheriff's car.   After Houck had been put in the sheriff's car in the care of the deputy, the sheriff returned to the cars that had collided.   While some of the men made efforts to disengage the bumpers, the sheriff and two others who had flashlights directed the traffic.

During the time this was going on, the headlights and the blinkers (two red lights which alternately turned on and off) of the sheriff's car were on, and the dimmers and the spotlight of the Rumboldt car were on.   The spotlight was turned to shine on the Peckham and Houck cars across the road, and the Rumboldt car in no way screened the sheriff's car from the

vision of persons approaching from the east. The taillight on the Houck car was burning, as well as the headlights on the Peckham car. There were other cars parked on both sides of the concrete.

About a half-hour after this first collision, while the Peckham and Houck cars were stalled in the north lane and while the circumstances described above prevailed, the Poole car approached the scene from the east. There is testimony indicating that several of the men heard the Poole car approaching even before it came into view at a point between forty and sixty rods down the road, east of the stalled cars. Plaintiff testified that he thought he was not traveling over forty miles per hour. Others estimated his speed to be around fifty miles per hour. Although the testimony shows that those with flashlights tried to flag him down, Poole did not see the flashlights, nor did he see any of the other lights and cars in the vicinity. He did not reduce his speed, and when those who were trying to flag him down saw that he was coming right on in spite of their efforts to stop him, they ran to the sides of the road. Poole testified he did not see the Houck car until he was about thirty feet from it. His car struck the rear end of the Houck car, and the impact drove the Peckham and Houck cars down the highway, where they came to a stop in the ditch on the north side of the road about one hundred thirty feet away.

There was a special verdict. The court answered that the defendant Houck was negligent as to the position of his car on the highway and that his negligence was a cause of the accident; that the plaintiff, Poole, was negligent as to lookout, speed, and management and control of his car and that his negligence was a cause of the accident. The jury attributed fifty-three per cent of the combined negligence to the defendant Houck and forty-seven per cent to the plaintiff, Poole.

Assuming that Houck was negligent as to the position of his car on the highway, as the trial court determined, the evidence shows beyond question that Poole's negligence was as great

or greater than Houck's.  Defendants' motion that a verdict be directed in favor of the defendant against the plaintiff dismissing the plaintiff's complaint upon its merits should therefore have been granted.

The circumstances were such that Poole ought to have seen the Peckham and Houck cars parked in the north lane and ought to have managed his car so as to avoid crashing into the Houck car.  The rear light of the Houck car, the headlights and blinkers of the sheriff's car, parked facing the direction from which Poole approached, were on.  The dimmers of the Rumboldt car were on, as well as its spotlight, which was directed onto the Peckham and Houck cars.  Besides all this there were about seven or eight other cars parked just off the highway near by, and there were three men directing traffic with flashlights.  The men saw Poole coming when he was forty to sixty rods down the highway, and some heard him before that.  Although there was a slight dip in the road a short distance east of where the Peckham and Houck cars were, there appears to have been nothing to obstruct Poole's view of the situation.  The men tried to stop him.  One man was waving his flashlight from about the middle of the highway, another from the north side of the pavement, both east of the Houck car.  The south lane of the highway was free, and other motorists, aided by those directing traffic, had apparently passed the scene with no trouble.

In such a state of facts, it seems clear that plaintiff Poole's failure to observe the situation and to act accordingly amounted to negligence that was at least as great as, if not greater than, the negligence of the defendant Houck.  The jury's verdict apportioning fifty-three per cent of the negligence to Houck and forty-seven per cent to Poole should therefore be overruled.

No other case where the fact situation is exactly similar to the one at bar has come to our attention, but the complete failure of plaintiff to use ordinary care for his own safety or that

of others, created a condition where it becomes the duty of the court to consider the relative negligence of the parties. It being considered that the negligence of Poole must be held as a matter of law to be as great or greater than that of defendant Houck, it becomes necessary to deny plaintiff Poole's recovery and to grant a new trial on Houck's counterclaim and cross complaint. The new trial is to determine how much greater, if any, the negligence of Poole is over the negligence of Houck.

*By the Court.*—Judgment reversed. Cause remanded for a trial of the issues indicated and in accordance with this opinion.