Puccio and another, Plaintiffs, vs. Mathewson and others, Defendants. [Two appeals.]

Spaeni, Plaintiff, vs. Same, Defendants. [Two appeals.]

*November 8—December 4, 1951.*

*D. V. W. Beckwith* of Madison, for the plaintiffs Edna Puccio and Joseph D. Puccio.

*Hugh F. Oldenburg* of Madison, for the plaintiff Edna Spaeni.

For the defendants Donald B. Mathewson and General Casualty Company there were briefs by *Rieser, Mathys, McNamara & Stafford* of Madison, and oral argument by *Clifford G. Mathys.*

For the defendants Alexander Medill and Standard Accident Insurance Company there were briefs by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Lawrence E. Hart.*

FRITZ, C. J.   The injuries received by the plaintiffs Edna Spaeni and Edna Puccio were sustained in two collisions

which occurred at about one o'clock a. m., on November 21, 1949. The first collision was between cars operated by Mathewson and Medill, respectively. Within a few minutes after that collision the defendant Rose's car collided with the rear of Mathewson's car, while it was still where it stopped after the first collision and while plaintiffs Edna Spaeni and Edna Puccio were still in Mathewson's car. The cars collided on a viaduct about three hundred feet long. For some distance east and west of the viaduct there was a four-lane road, and those lanes continued across the viaduct. At the time of the collisions a Dane county truck was parked, headed somewhat southeastward on the viaduct in the first lane south of the center of the four-lane roadway. William Smith, a Dane county employee, had stopped the truck for the purpose of sanding the highway. Two headlights, one blue light in front, two auburn lights, two clearance lights, one sanding light in the back, and one blue light on the back of the truck were lit at the time of the collisions.

Just prior to the first collision the Medill and Mathewson cars were traveling westerly in the lane immediately north of the center of the viaduct, with Mathewson's car approaching toward the rear of the Medill car. Mathewson testified that when he first saw Medill's car it was about one hundred fifty feet ahead and both cars were then within a short distance of the west end of the viaduct; that as they continued along the road Mathewson gained on the Medill car and intended to pass it; that at approximately the time he intended to signal Medill with his lights so that Medill would move over to his right and allow him to pass, Mathewson saw the lights of the parked truck on his left; that he was startled by those lights and when he glanced back on the road to look ahead and see if he could see the Medill car his vision was obscured; that it was as if there was a "small fog" in front of his face and when his vision cleared the Medill car was directly in front of him and he could not avoid

striking that car; and that Mathewson traveled three hundred feet with his brakes on lightly while he was unable to see because of said "fog." Upon striking the rear of Medill's car, Mathewson's car came to a stop at or near the west end of the viaduct with the "major portion" of his car in the lane immediately north of the middle of the viaduct, and the rear wheel and trunk extending into the next lane to the south.

There are conflicts in the witnesses' testimony as to just where Mathewson's car stopped. After the first collision, William Smith and the occupants of Medill's car went over to the Mathewson car and within very few minutes, Rose's car was observed approaching very fast from the east and Smith and the occupants of the Medill car all ran rapidly to the north side of the road to avoid being struck by Rose's car, which collided with the rear of Mathewson's car. Ben Kaplan, a guest in Rose's car, testified it was traveling at forty-five miles per hour, and William Smith testified it was fifty miles per hour or better when it collided with Mathewson's car, but that Rose's car did not come in contact with Medill's car.

Although Rose was duly served and made a party, he did not appear in the actions and was not present or represented by counsel at the trial. The court in answering the questions in the verdict relating to Rose, found that he was causally negligent in reference to lookout, speed, and management and control.

The testimony regarding the time which elapsed between the two collisions was: Smith said "within" five minutes; Mathewson said approximately three minutes; Medill said two or three minutes; and Gerber, a guest in Medill's car, said about one minute.

During the afternoon of the second day of the trial the location and position of Medill's car after the first collision

became of crucial importance. At that time Mathewson's and his insurer's attorney, moved for leave to file a cross complaint with an allegation that Medill was negligent, at the time and place of the accident, in respect to the position in which he permitted his car to remain following the first collision with Mathewson's car, and that the injuries and damages sustained by the plaintiffs were proximately caused by Medill's negligence in that respect.

Medill's attorney objected to the court granting leave to file such cross complaint and stated:

"I would have no serious objection to the answer being amended at this time so as to include a cross complaint were it not for the fact that an additional allegation that wasn't in the case prior to the start of the trial, is attempting to be included in that cross complaint. As to that I do most seriously object and I do claim surprise, . . . and claim that if a cross complaint is to be interposed at this time with that additional allegation relating to the position of our car [Medill's] after the first collision in it, that we are entitled to the usual twenty days in which to answer and cross complain and prepare to meet that issue. . . . This is the first time that any motion has been made to amend any pleadings to inject that issue formally into the case. . . . I do desire to file that affidavit as soon as it is available in support of my objection to a cross complaint containing that additional allegation relating to the position of our car and on the basis of that, claim surprise and move for continuance until we have an opportunity to prepare a defense for that issue which we haven't had up until this time."

Medill's attorney stated also that Rose would testify that as he approached the place where the accident happened, he saw the sanding truck, and saw Mathewson's car across the road, and did not see the Medill car at any time until after the first accident occurred at which time he saw that car farther west down the road, from where his car stopped, and that the testimony of Rose was vital testimony on the question as to any negligence of Medill with reference to the

position and removal of his car; that Medill's attorneys have a statement from Roy Holster, who was a passenger in Rose's car, that he did not see the Medill car at any time before the first accident, and that if Medill's attorneys had had any idea that the claim now made would be made, they would have arranged to obtain Holster's testimony; and that they cannot safely go to trial without that testimony which would have been available if they had had any notice prior to the trial, of the claim that is now made.

Notwithstanding the objections stated by Medill's attorney, the court granted Mathewson and his insurer leave to file their intended cross complaint, and proceeded with the trial of the actions without granting Medill and his insurer sufficient time to file an answer to said cross complaint and prepare to meet the issues raised thereby, by arranging to procure the testimony of Bert Rose, Roy Holster, and Ben Kaplan upon their attendance at the trial or by taking their depositions. Because of the court's errors in that respect, Medill and his insurer are entitled to a new trial in relation to the issues raised by Mathewson's and his insurer's cross complaint for contribution by Medill and his insurer.

Consequently, the provisions in the judgments in relation to contribution by Medill and his insurer must be reversed with directions to grant them a new trial in order to determine whether Mathewson and his insurer are entitled to any contribution by Medill and his insurer.

In the verdict the jury found that the injuries sustained by Edna Puccio and Edna Spaeni were caused by negligence, on the part of Mathewson prior to the first collision, (1) as to lookout, (2) with respect to giving a signal of his intention to pass the Medill car, (3) with respect to his failure to remove his car from the roadway following the first collision, so as to increase the danger which said plaintiffs assumed when they entered his car, and (4) with respect to his failure to exercise the skill and judgment he possessed

in the management and control of his car; and found that said plaintiffs did not acquiesce in Mathewson's negligence and did not assume the risk; but found that the plaintiffs were negligent in respect to lookout and to warning Mathewson just prior to the first collision.

In relation to Medill the jury found that he was (1) not negligent as to his speed just prior to the first collision, (2) or with respect to giving a signal of his intention to stop or slow down just prior to the first collision; and (3) that he was but negligent with respect to the removal of his car from the roadway following the first collision and prior to the second collision.

On Mathewson's and his insurer's appeal, they do not contend that there was any error in the jury's finding that Mathewson was causally negligent as to lookout and with respect to signaling his intention to pass Medill's car just prior to the first collision. But the jury also found that Mathewson was causally negligent with respect to the removal of his car from the roadway after the first collision.

As stated above, there was a variance of from one to five minutes in the testimony of four witnesses as to their estimates in respect to the time that elapsed between the first collision of Mathewson's car with Medill's car; and the second collision of Mathewson's car with Rose's car. But, in addition to those estimates, there was testimony as to other facts which indicate that a more substantial amount of time elapsed between the two collisions. Medill testified that when Mathewson's car struck Medill's car it moved ahead and he stopped it on the road and got out of his car and looked over the damage to his car and decided that he had better get it off the road, and he got back in his car and drove it ahead seventy-five feet and onto the shoulder of the highway; that he and the other occupants of his car then got out and went back at least one hundred seventy-five feet to Mathewson's

car, and when he got there he saw Mathewson, and went over to help the people in his car; and then he saw the headlights of the Rose car approaching.

Mathewson's testimony as to why he did not move his car off the road was: First of all, he got out to see whether somebody else in the other car ahead might have been hurt, and at the same time to see whether his car was damaged severely in front, and if he could move it, and the only thing he could see was the damaged front end of the car. He never tried to drive it off the road. It was a new car, and by starting to get out he might have shorted it and set it on fire. Before he had a chance to get back to his automobile he saw the other lights of Rose's car coming.

On an adverse examination Mathewson testified that there was not anything to his knowledge to prevent him from driving his car off to the shoulder on either the north or the south side of the road.

On the trial there was no objection to the submittal of the question in the special verdict: "Was the defendant Mathewson negligent: (c) With respect to removal of his car from the roadway following the first collision?" In answer thereto the jury found that Mathewson was causally negligent. In relation to that question and the jury's finding, Mathewson's attorneys contend that the court's instruction was erroneous in that it "not only permitted but practically required the jury to find that the involuntary stopping of the car after the accident was in violation of the parking statute," sec. 85.19 (1), Stats. There was no evidence that Mathewson's car was damaged so that it could not be moved following the first collision. Even if the motor may have stalled when his car collided with Medill's car, that does not necessarily mean that his car could not be operated and immediately removed from the roadway. He made no more than a casual inspection of his car and testified that the part of his car which

came in contact with the Medill car was the right front headlight. The court's instruction in relation to the question, "Whether Mathewson was negligent with respect to removal of his car from the roadway following the first collision" was as follows:

"In connection with this question you are instructed that the statutory law of Wisconsin provides: '85.19 PARKING, STOPPING OR STANDING. (1) *Parking on highway.* No person shall park, stop, or *leave standing* any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop, or *leave standing* any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction along such highway.'

"This is a safety statute and failure to comply with it is negligence. In answering this question you will take into consideration the oral testimony, the physical facts, such as the position of the cars after the first collision and prior to the second collision, the width of the roadway and the condition of the roadway, position of the cars after the second collision, the time that elapsed between the first and second collision, and any other physical facts that may be relevant to the determination of this question.

"The burden of proof is upon the plaintiffs Mr. and Mrs. Puccio and upon the plaintiff Miss Spaeni, and upon defendants Medill and Standard Accident Insurance Company, to convince you to a reasonable certainty by a fair preponderance of the evidence that question I (C) should be answered 'Yes.' Answer it 'Yes' or 'No' as you find the fact to be."

Prior to that instruction, the court had instructed the jury as follows: "Many regulations are provided by the statutes of the state of Wisconsin for the safe operation of motor

vehicles on the public highways of the state. The operator of any motor vehicle who disobeys any such safety statute is guilty of negligence."

Mathewson's attorneys state in their brief:

"The parking instruction given by the court and the statute quoted in connection therewith, have no reference to the *involuntary stopping* of the Mathewson car."

That statement is erroneous. The statute quoted in the court's instructions reads: "No person shall park, stop, or *leave standing* any vehicle, whether attended or unattended, upon any highway. . . ." That provision applies whether the stopping was voluntary or involuntary, and is in relation to the vehicle after it has come to a stop, no matter what the cause of the stopping may have been. It prohibits the parking, the stopping, or the *leaving* of a vehicle upon any highway under the circumstances stated in sec. 85.19 (1), Stats.; and it is clearly applicable to Mathewson's leaving his car standing on the roadway. No claim was made that Mathewson parked or stopped his car on the roadway. It was clearly understood by all of the participants in the case, that Mathewson's car stopped by reason of the first collision. The question in the verdict, which the jurors had to answer, directed their attention solely as to whether Mathewson was negligent with respect to *leaving* his car standing on the roadway instead of removing it from the roadway immediately following the first collision; and the instruction was given by the court in relation to solely that question.

As there were conflicts in the evidence as to the time which elapsed between the two collisions, there was an issue for the jury as to whether Mathewson had sufficient time to determine the damage to his car and drive it off the roadway, and in determining that issue the jury was not limited solely to the estimates of the four witnesses whose testimony varied from one to five minutes as to the time that elapsed between

the two collisions. In respect to that issue, the jury could conclude that Medill was correct in testifying that his car was driven forward about one hundred feet in the first collision and that he then had sufficient time to stop his car, get out and inspect the damage to his car, and get back into it and drive it seventy-five feet forward onto the shoulder of the road, and then go back to Mathewson's car which was one hundred seventy-five feet to his rear.

In view of the evidence and the jury's findings in those respects, the court's instructions were not erroneous.

Mathewson's attorneys complain because the court failed to add to its instruction the provisions of sub. (8) of sec. 85.19, Stats., which reads:

"The provisions of this section shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

There was no request made on behalf of Mathewson that the court instruct the jury on the provisions of sub. (8) of sec. 85.19, Stats. Neither was there any evidence that Mathewson's car was disabled to such an extent that it was impossible to avoid stopping or leaving the car in such a position on the highway. Consequently, there was no error in that respect by the court.

Since there was no evidence that Mathewson was unable to remove his car on its own power, he cannot claim the protection which might otherwise have been afforded under the provisions of sec. 85.19 (8), Stats.

It follows that in so far as the defendants Mathewson and his insurer, and Bert L. Rose are concerned, the plaintiffs are presently entitled to judgment for the recovery of damages from said defendants. The jury assessed the total amounts of the damages sustained by Edna Spaeni at

$23,233.35; by Edna Puccio at $5,839.50; and by her husband Joseph D. Puccio at $1,188.50.

The jury also found that of the total causal negligence, five per cent was attributable to each of the plaintiffs Edna Spaeni and Edna Puccio by reason of their contributory negligence in failing to keep a proper lookout and in failing to warn Mathewson just prior to the first collision. Because of said findings the court ordered the deduction of five per cent of the amount of the damages assessed by the jury as to each of the plaintiffs, and ordered the entry of judgment for each plaintiff's recovery of ninety-five per cent of the amount of the damages assessed in their favor by the jury. Edna Puccio and her husband petitioned for a review of the said order. Upon our review of the evidence upon which the order was based, we find that the material facts were as follows: Edna Spaeni was sitting on the right side of the front seat, with Edna Puccio in the middle, and Mathewson in the driver's position. Just before and at the time of the accident, Edna Puccio was talking to Edna Spaeni, and while so doing, had her head and eyes turned to the right. At the time of the accident and for a short time prior thereto, Edna Puccio's attention was diverted by reason of her conversation with Edna Spaeni. While Medill's car was in sight and was being driven somewhat slower than Mathewson's car, there was nothing under the circumstances which should have been deemed to be a warning to the plaintiffs of any approaching accident, or any danger in driving behind the Medill car. And there was nothing to prevent the Mathewson car from passing the Medill car at that time, or slowing down in order to proceed safely in the same lane across the viaduct. The mere fact that Edna Puccio was talking to Edna Spaeni and had her head and eyes turned to the right was not sufficient proof to warrant the jury finding they were both negligent in failing to keep a sufficient lookout or in failing to warn Mathewson. Consequently, on Edna Puccio's and her hus-

band's motion for review, the court's order reducing the amounts of their damages by five per cent must be reversed and judgment entered in their favor for the full amount assessed by the jury. In the absence of any motion by Edna Spaeni for a review of the order reducing the amount assessed as her damages by the jury, the judgment must be affirmed as entered. Edna Spaeni, Edna Puccio, and Joseph D. Puccio, respectively, are presently entitled to the payment of said judgments by Mathewson and his insurer.

On the other hand said defendants are entitled to proceed in this action with the trial on their cross complaint against Alexander Medill and his insurer of such issues as may be raised by the latters' pleadings in answer to the cross complaint. In that respect there is applicable the procedure stated in *Scharine v. Huebsch,* 203 Wis. 261, 267, 234 N. W. 358; to wit:

"The plaintiff has not appealed from the judgment. She is content with a judgment against the defendant Huebsch alone. The judgment should be affirmed in so far as it awards her damages against Huebsch. Affirmance of this part of the judgment and reversal of the portion of it dismissing the cross complaint of the defendant Huebsch against the defendant Schultz will require entry of two judgments in a law action, which is unusual, perhaps without precedent. But we see nothing in reason, as distinguished from precedent, to prevent this. The situation presented by the issue of contribution between tort-feasors whenever a defendant claims a cause of action over against another was first discussed in *Bakula v. Schwab,* 167 Wis. 546, 168 N. W. 378. It was there held that under sec. 2610, now 260.19 (3), Stats., the court had power to interplead as a party in a tort action one against whom the defendant claimed the right of contribution as a joint tort-feasor in the event that he was held liable to the plaintiff. It was later pointed out in *Wait v. Pierce,* 191 Wis. 202, 225 *et seq.,* 209 N. W. 475, 210 N. W. 822, that while at common law the right of contribution did not arise until the defendant tort-feasor held liable had made payment, under our practice we permit him to interplead the other tort-

feasor and raise the issue of contribution by cross complaint against him. The two issues, that between the plaintiff and the defendant first sued and that between the latter and the interpleaded defendant, really constitute two separate actions which we permit to be litigated together in order to settle the whole controversy by one trial. When in such a case the plaintiff has recovered a verdict against the original defendant his rights in his action are established, and we see no reason why he may not then have judgment in his action and the litigation end as to him, and the defendants go on with the litigation of the issue in the action between themselves, and judgment be subsequently entered determining their rights." See also *Schwellenbach v. Wagner,* 258 Wis. 526, 534, 46 N. W. (2d) 852.

*By the Court.*—The judgment for the plaintiff Edna Spaeni's recovery of the amount provided in the judgment against the defendants Donald B. Mathewson and General Casualty Company is affirmed.

The judgments for the plaintiff Edna Puccio and for the plaintiff Joseph D. Puccio against Donald B. Mathewson and General Casualty Company are modified to provide for the recovery by each of said plaintiffs of the amount of the damages sustained by each of them as assessed by the jury.

The judgments for the recovery by Donald B. Mathewson and General Casualty Company against Alexander Medill and Standard Accident Insurance Company for contribution by them for half of all sums paid by Donald B. Mathewson and General Casualty Company to the plaintiffs, Edna Puccio, Joseph D. Puccio, and Edna Spaeni are reversed, and the causes remanded for a new trial.