JENNINGS, Administratrix, Respondent, vs. MUELLER TRANSPORTATION COMPANY and others, Appellants.*

*January 11—February 8, 1955.*

* Motion for rehearing denied, without costs, on April 5, 1955.

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland.*

For the respondent there was a brief and oral argument by *Frank M. Coyne* of Madison.

CURRIE, J. Question 1 of the special verdict read as follows:

"At and just prior to the time of the accident in question was Herbert N. Ranheim negligent in the operation of his vehicle in the following respects:

"(a) In respect to the manner and place of turning of his vehicle around upon the highway?

"(b) In respect to parking, stopping, or leaving his vehicle standing upon the highway?

"(c) In respect to leaving a clear and unobstructed view of his vehicle for 200 feet in each direction?

"(d) In respect to leaving less than 15 feet of clear and unobstructed passageway upon the highway to the left of his vehicle?

"(e) In respect to giving an adequate warning to the deceased, Raymond Lee Jennings, of the presence of his, Ranheim's, vehicle upon the roadway?"

The jury answered all five subdivisions of the question "Yes," and also answered "Yes" to each of the five corresponding subdivisions of the ensuing causation question.

Such question 1 of the special verdict, including its five subdivisions, was submitted to the jury by the learned trial court pursuant to written request of plaintiff's counsel. Coun-

sel for the defendants made timely objection to the inclusion of subdivisions (b), (c), and (d) of question 1. The grounds for this objection were that inasmuch as such three subdivisions had reference to the provisions of sec. 85.19 (1), Stats.,[1] the provision of sec. 85.19 (8) rendered them inapplicable on the basis of the undisputed facts of this case. Sec. 85.19 (8), provides:

"The provisions of this section shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

Before the collision occurred, at least two trucks had arrived from the north and stopped and the operators had gotten out and inspected the Mueller stalled combination unit blocking the paved portion of Highway 51. It was the testimony of these other truckers, as well as of Ranheim, that the stalled unit could not be removed from the highway under its own power, or with the assistance of the persons then present, and that a wrecker was required for such purpose. Ranheim had gone to the nearest farmhouse in an attempt to telephone to secure the services of a wrecker when the collision occurred. We, therefore, deem the stalled unit to have

---

[1] Sec. 85.19 (1), Stats. *Parking on highway.* No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than 15 feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction along such highway.

been a "disabled" vehicle within the meaning of sec. 85.19 (8), Stats., and that it was error to submit subdivisions (b), (c), and (d) of question 1 of the special verdict to the jury. The negligence of Ranheim was in the manner and place of turning the combination unit, and not in stopping or parking the same. Such stopping was entirely involuntary because it was the result of becoming disabled in the turning operation.

Counsel for plaintiff cites several cases in support of his contention that subdivisions (b), (c), and (d) of question 1 were properly submitted, including *Puccio v. Mathewson* (1951), 260 Wis. 258, 50 N. W. (2d) 390; *Yanisch v. American Fidelity & Casualty Co.* (1950), 257 Wis. 462, 44 N. W. (2d) 267; and *Bornemann v. Lusha* (1936), 221 Wis. 359, 266 N. W. 789. An examination of the decisions in these three cases, however, discloses that none of them support such contention.

The case of *Puccio v. Mathewson, supra* (p. 268), involved a passenger automobile which was damaged in a collision with another vehicle and then subsequently was struck by a third vehicle with some little lapse of time occurring between the two collisions. The testimony was in dispute as to whether the first-mentioned vehicle had been removed off the traveled portion of the highway following the first collision, but the jury determined in effect that it had not by finding the operator negligent with respect to moving the same "from the roadway immediately following the first collision." As pointed out in the opinion, there was no evidence that the car was so damaged that it could not have been moved following the first collision. This is in direct contrast with the undisputed testimony in the instant case, that the stalled truck could not be removed from the highway except by the means of a wrecker.

The fact situation in *Yanisch v. American Fidelity & Casualty Co., supra* (p. 466), is strikingly similar to that of

the case at bar. In the *Yanisch Case,* the operator of a
tractor-trailer unit found he was traveling in the opposite
direction from which he desired to go and attempted to
turn the unit around on the highway, but in doing so it
became stalled in the snow, with the unit blocking a consider-
able portion of the highway. A collision then occurred as
the result of a truck colliding with the stalled tractor-trailer
unit. Only two questions were submitted in the special ver-
dict as to the alleged negligence of the operator of the stalled
tractor-trailer unit. One related to the position of the tractor-
trailer unit on the highway, and the other as to the placing
and maintaining of proper flares, fusees, or other warning
devices, both questions being answered in the affirmative.
On appeal this court held that the issues as to the negligence
of the operator of the tractor-trailer unit had been properly
submitted. Subs. (1) and (8) of sec. 85.19, Stats., are not
referred to in the opinion. It is apparent from the opinion
that this court considered that the first question submitted
covered "the conduct of the driver in bringing about the
condition which set the stage for this collision." In other
words, such first question was based on the same theory of
negligence as expressed in sub. (a) question 1 of the verdict
in the instant case.

In *Bornemann v. Lusha, supra* (p. 367), the issue was
squarely raised as to whether a tractor-trailer unit was a
*"disabled"* vehicle within the meaning of sub. (8) of sec.
85.19, Stats., as a matter of law. A wheel had come off the
unit but it had coasted from 580 to 680 feet thereafter before
it came to a stop on the traveled portion of the highway.
This court held that whether or not it was "impossible to
avoid stopping or temporarily leaving such vehicle in such
position" on the concrete portion of the highway presented
a jury issue in view of the great distance the vehicle traveled,
after the wheel came off, during which time the operator had
made no attempt to turn or maneuver the vehicle onto the

shoulder of the highway. Such facts readily distinguish that case from those in the instant case.

We consider the decision in *Scheffler v. Bartzen* (1937), 223 Wis. 341, 269 N. W. 537, to be much more in point than the preceding mentioned cases. There the operator of a tractor-trailer unit drove 100 feet after a noise developed at the rear of the trailer. The driver of the truck stated that the reason he did not pull off the shoulder during such 100 feet distance was that the shoulder was wet and he feared that he would lose traction to the extent of the tractor being unable to pull the trailer. Upon stopping it was discovered that the trailer was disabled in that the tire of the right double wheel was off and that another turn of the wheel would have caused the wheel itself to come off, leaving the trailer to rest on the brake drum. Proper flares were placed out to warn approaching traffic, and the driver spent several hours trying to repair the trailer so that it could be moved, which attempt had not been successful up to the time that the plaintiff's vehicle collided with it. The judge of the civil court, who first tried the case, found the operator of the stalled trailer negligent. On appeal the circuit court held that sec. 85.19 (8), Stats., applied, and that under the undisputed evidence there was no ground for finding that defendant's trailer could have been moved off the concrete, and that it was impossible to have avoided stopping the vehicle and temporarily leaving it on the highway. This court upheld such determination of the circuit court.

Inasmuch as it was error to have submitted subs. (b), (c), and (d) of question 1 of the special verdict, the answers "Yes" to all three of such subdivisions may have affected the jury's answer to the comparative-negligence question by which it was determined that Ranheim's negligence constituted 85 per cent of the total aggregate negligence. This will necessitate ordering a new trial unless defendants are

entitled to a dismissal of plaintiff's cause of action as a matter of law.

Counsel for the defendants contend that the defendants are entitled to such dismissal on the ground that the negligence of Jennings was, as a matter of law, as great or greater than the negligence of Ranheim. The decisions of this court in *Poole v. Houck* (1947), 250 Wis. 651, 27 N. W. (2d) 705; *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134; and *Hephner v. Wolf* (1952), 261 Wis. 191, 52 N. W. (2d) 390, are cited in support of such contention. In all three of these cases the drivers of vehicles which collided with the rear of parked or stalled vehicles were held, as a matter of law, to be guilty of at least 50 per cent of the aggregate negligence. However, this court made it clear in our decision in *Schroeder v. Kuntz* (1953), 263 Wis. 590, 58 N. W. (2d) 445, that we are not committed to the principle that the negligence of the operator of a moving vehicle which collides with the rear of a stalled or parked vehicle must always be found, as a matter of law, to equal at least 50 per cent of the aggregate negligence, but that there are cases where the comparison presents a jury issue. Under the facts of the instant case, where Ranheim attempted to turn his vehicle around on an incline in a "no passing" zone within a distance of 200 feet from the brow of the hill, and the jury determined upon conflicting evidence that Ranheim was negligent in failing to give adequate warning to Jennings of the presence of the stalled unit on the highway, we are of the opinion that the comparison of negligence was properly for the jury to determine.

Therefore, it necessarily follows, for the reasons hereinbefore stated, that a new trial must be ordered. For the guidance of the trial court at such new trial it might be considered valuable to touch on two matters discussed in the briefs of counsel which, while not determinative of the result on this appeal, are likely to again arise if a new trial is had.

Pursuant to the written request of plaintiff's counsel, the trial court gave an instruction to the jury as to the existence of the presumption of the exercise of due care, and freedom from negligence, of a deceased person. This was given in connection with the questions in the verdict inquiring as to the negligence of Jennings. For the reasons stated in our opinion in *Atkinson v. Huber,* ante, p. 615, 68 N. W. (2d) 447, which case was argued and decided this assignment, such instruction should not have been given.

Counsel for the defendants contend in their brief that Jennings was negligent as a matter of law as to speed. In support of such contention counsel maintain that after Jennings came over the brow of the hill to the south, and saw the stalled vehicle, he should have reduced his speed. However, this court has ruled in *Thoms v. Gunnelson* (1953), 263 Wis. 424, 429, 57 N. W. (2d) 678, that the failure to reduce speed after a dangerous situation has been sighted is properly a matter of management and control, and not speed. This suggests that, if at the new trial the evidence presented follows the pattern of the first trial, a question of Jenning's management and control should be submitted in the special verdict.

*By the Court.*—Judgment reversed, and cause remanded for a new trial in conformity with this opinion.