LEITERMAN and wife, Appellants, vs. BURNETTE and another, Respondents.

*November 10—December 6, 1955.*

360

For the appellants there was a brief. by *Warne, Duffy & Dewane* of Green Bay, and oral argument by *Melvin W. Dewane* and *William J. Duffy*.

For the respondents there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *James L. Everson* and *E. L. Everson*.

FAIRCHILD, C. J.   A special verdict was prepared by the trial judge. The appellants requested the submission of a question of management and control because respondent, Bryle Burnette, failed to reduce speed timely. While concurring acts may cause an accident, still where a driver has developed speed to a degree that when he discerns an obstruction ahead he is unable to do anything to prevent a collision, then the only factor on which to base responsibility is that very speed.

The evidence shows that shortly before the occurrence of the accident the occupants of the car had stopped alongside the town road. When they got back into the car the two girls were singing from a songbook "during the time that . . . [they] drove after leaving the spot by the side of the road." There is some evidence that the dome light was on, which, if true, would have lessened the vision of the driver as to distance ahead of the car. Agatha was sitting sidewise in the front seat next to the right door of the car. She was facing toward the occupants in the rear. It is undisputed that Bryle had his eyes and attention fixed on the road. The others were paying no attention to the road, and no one protested as to the speed of the driver. Delores Nesvacil, the girl in the back seat, testified that "I thought it was perfectly all right for him to be driving *at the speed of 50 or 60 or somewhat more* along that stretch of road." Gerald Bernetzke, who also rode

in the back seat, testified: "I usually drive with my mother, and she drives awful slow. If we were going around 40 I'd know that because that's the speed my mother drives. Based on my previous experience of speed, all I know he was going pretty fast." Bryle Burnette testified: "I was driving a 1950 Ford, a V-8. That's a powerful motor, and I had it wide open all the way. . . . I know I was going wide open, because of the damage I did to the car, and what happened." He also testified that he remembered "making a statement under oath before Robert P. Stebbins, court commissioner, on the 29th day of April, 1954, at which time I said I was going 100 miles an hour." Burnette attempted to stop his car as soon as he realized the danger with which he was faced. There were well-marked skid tracks for the last 100 feet traveled by the car, and he testified: "I didn't know I was coming to this intersection until I saw that telephone post, the telephone post I snapped the guy wire off." "About 300 or 400 feet before the intersection there was quite a dip in that road, . . . As soon as I saw the telephone pole I knew something was wrong, so I hit my brake. When I came out of this dip my lights hit the telephone pole."

In framing a special verdict, the trial judge seeks to have the jury pass upon the ultimate facts on which the judgment will be based. ". . . it must be deemed settled that it is unnecessary to submit a question of fact to the jury when the fact itself is established by undisputed evidence. When so established the fact is as much a verity in the case as though it were admitted by the pleadings. It would be absurd to submit a question of fact to the jury when there is no question that the fact exists." *Berg v. Chicago, M. & St. P. R. Co.* 50 Wis. 419, 425, 7 N. W. 347. The verity which exists in the instant case is that Burnette applied his brakes as soon as he sighted the danger with which he was confronted. As was pointed out by the learned trial court: "Burnette testified that

he did not realize that he was approaching the intersection until he saw the light pole with the guy wire on the west side of County Trunk G and that he then 'hit' his brakes, attempting to bring his car to a stop. He could not do so, obviously, because he was going too fast. . . . at no time has it been claimed in this case that any negligence could be predicated upon what Burnette did or failed to do after he in fact realized that he was coming to a dead-end intersection. Until he saw the peril ahead no negligence could be predicated upon management and control. His negligence up to that time consisted of either faulty lookout or speed, or both." At the moment when speed might have entered into the matter of management and control, that is, at the very moment Burnette realized the existing danger, Burnette acted in such a way as to relieve himself of any negligence as to management and control by applying his brakes. Therefore management and control did not enter into the picture, and the only fields of negligence in which he could have been guilty were speed and lookout. Questions on those points were properly submitted to the jury, and the jury found:

As to Bryle Burnette:

1. That he was negligent as to speed but not as to lookout.
2. That such negligence was causal.

As to Agatha Leiterman:

1. That she assumed the risk arising from such negligent speed on the part of Bryle Burnette.
2. That she was negligent as to her own safety with respect to protesting against such speed.
3. That she was negligent as to lookout.
4. That her negligence was causal.

Other questions raised by appellants relate to matters that cannot affect the judgment in this case. After considering the record and the instructions of the court, in the light of the established fact that negligence could not be predicated upon

management and control, we are of the opinion that all of the material issues were properly submitted to the jury, and that the judgment rendered in accordance with the verdict as rendered should be affirmed.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). I must respectfully dissent from the majority opinion herein because I deem it was error for the trial court not to have submitted in the special verdict the questions requested by plaintiffs' counsel with respect to whether the defendant Bryle Burnette was causally negligent as to management and control, and failure to stop for the arterial stop sign.

In evaluating evidence to determine whether it is proper to refuse to submit a requested question in a special verdict, the same test ought to be applied as in the case of passing on a motion for directed verdict. It is error to direct a verdict if there is "room in the evidence for the jury to have reasonably found either way." *Lambrecht v. Holsaple* (1916), 164 Wis. 465, 467, 160 N. W. 168. Applying such test to the instant case, it was error to have refused to submit the questions of control and management, and failure to stop for the arterial stop sign, if there was room in the evidence for the jury to have answered such question either way.

Failure of an operator of a motor vehicle to reduce speed when a dangerous situation is sighted is properly a matter of control and management and not speed. *Albrecht v. Tradewell* (1955), ante, p. 303, 73 N. W. (2d) 408; *Jennings v. Mueller Transportation Co.* (1955), 268 Wis. 622, 631, 68 N. W. (2d) 565; and *Thoms v. Gunnelson* (1953), 263 Wis. 424, 429, 57 N. W. (2d) 678.

The majority opinion omits to state the facts from which the jury could have reasonably inferred that Bryle Burnette did see the light pole at the far or west side of County

Trunk G in time to have stopped the car and avoided hitting the guy wire of such pole. The following, in question and answer form, is a portion of his testimony bearing on this point:

"*Q.* Now, how far away were you from this telephone pole or this electric-light pole when you first saw it, Bryle? *A.* When I first saw it?

"*Q.* Yes. *A.* Oh, I imagine about 300 or 400 feet.

"*Q.* 300 or 400 feet? *A.* Yes, sir.

"*Q.* And then you knew you were coming to the end of the road? *A.* Yes."

The skid marks measured back easterly from where the car came to a stop near such pole, as testified to by the traffic officer, were 96 feet in length. In other words, while Bryle had first sighted the pole and realized its significance when he was from 300 to 400 feet distant, he did not apply his brakes hard enough to make skid marks until but 96 feet away. From this the jury could reasonably infer, even after making due allowance for reaction time, that he did not properly apply his brakes as soon as he should have.

Furthermore, the testimony as to the speed at which Bryle was driving at the time he first sighted the pole is in sharp conflict. While at the trial he testified that he had the car "wide open" and might have been going 100 miles per hour, he told the investigating police officers on the night of the accident that he was going 50 miles per hour and gave them a statement to that effect the following day. In the criminal case brought against him in the municipal court of Brown county he also testified that he was driving at the rate of 50 miles per hour at the time the accident occurred. One of the girl passengers testified that the speed was from 50 to 60 miles per hour.

Because of these conflicts in Bryle's statements and testimony as to speed, his veracity was impeached and the jury did not have to accept as true any particular testimony which he

gave at the trial. For example, the jury did not have to accept as true Bryle's testimony that he applied his brakes the instant he saw the pole.

The facts brought out in evidence herein recounted constituted credible evidence which would have supported a jury's finding that Bryle was guilty of negligence with respect to control and management and that the same was causal. This being the case, it was error not to submit questions on such issue in the verdict.

The reason advanced by the learned trial court for not submitting the requested question as to failure to stop for the arterial stop sign, as stated in his memorandum opinion, was that the objective of the statute requiring such a stop to be made was to afford protection only against the danger of collision with vehicles on the arterial highway, and not with objects beyond the limits of the far side of such arterial highway, like the pole and guy wire in the instant case. Such a restrictive purpose is not stated in sec. 85.69, Stats., and I doubt the wisdom of so restricting the application of the statute by inferring such a limited purpose on the part of the legislature. Bryle was guilty of negligence *per se* in failing to comply with the requirements of the statute by stopping his vehicle within 30 feet of the near limits of County Trunk G.

I would reverse and remand for a new trial on the ground that it was prejudicial error not to have submitted in the special verdict the questions requested by plaintiffs' counsel as to management and control, and failure to stop at the arterial stop sign.

I am authorized to state that Mr. Justice BROADFOOT joins in this dissent.