SCHMIDT (Catherine), Plaintiff and Respondent, v. C. SCHLEI DRAY LINE, INC., and another, Defendants and Appellants: VAN STRATEN and others, Impleaded Defendants and Respondents: SCHMIDT (John) and another, Impleaded Defendants and Appellants.

*May 4—June 2, 1959.*

For the appellants C. Schlei Dray Line, Inc., and United States Fidelity & Guaranty Company there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson* and *James L. Everson.*

For the appellants John Schmidt and Herman Mutual Insurance Company there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan.*

For the respondents Theodore Van Straten, Harold Matzke, and Employers Mutual Liability Insurance Company there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Fred N. Trowbridge.*

BROWN, J.

### *John Schmidt's Appeal.*

Schmidt first noticed the grader coming toward him one-half mile away but did not see the semitrailer until it came about two thirds into the west half of the road. Schmidt could not estimate that distance from him but the

driver of the dump truck estimated that Schmidt was 600 to 700 feet from the Schlei Dray Line vehicle when the latter began to skid. Schmidt drove straight ahead until in an instant before the impact he steered his automobile onto the west shoulder and there collided with the semitrailer. Schmidt's car struck the other front-to-front with Schmidt's car heading somewhat west of south. Photographs taken at the scene show that the tractor unit was knocked around to the west at right angles to the trailer unit which remained pointing north. The force of this oblique impact permits an inference which corroborates testimony of other witnesses and a statement made by Schmidt to a traffic officer that Schmidt's speed was 25 miles per hour at the moment of the collision. At the trial Schmidt testified that he was practically stopped before the semitrailer hit him. Schmidt considers the statement is incompetent because at the time he gave it he was in pain and under sedation. Under the circumstances surrounding the taking of the statement, the statement was not incompetent but was a matter of the weight which the jury chose to give it.

No one contends that Vetting is not guilty of causal negligence. The difficult decision is to determine whether the evidence permits the finding that Schmidt was causally negligent. His counsel asserts that Schmidt was suddenly confronted with the horrible emergency alternative and as a matter of law he cannot be found guilty of negligent management and control in choosing his best means of avoiding the collision.

In the complex situation presented by the four motor vehicles, each of which had a part in the accident, the analysis of the testimony and the weight of the evidence are even more than usually proper considerations for the jury rather than for the court. When their findings are to be reviewed in this court the evidence and all reasonable inferences to be

drawn from the evidence must be considered from the standpoint most favorable to support the verdict. *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 184, 83 N. W. (2d) 759; *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740. There is evidence which the jury might believe that Schmidt should or did see that the semitrailer was heading for the west shoulder when it was 700 feet distant from him, and Schmidt continued to drive toward the semi at a speed of 25 to 35 miles per hour until almost the instant of collision. The failure to reduce speed after a dangerous situation has been sighted is properly a matter of management and control. *Jennings v. Mueller Transportation Co.* (1955), 268 Wis. 622, 631, 68 N. W. (2d) 565. Under the circumstances the jury was enabled to find that Schmidt's continued progress at that speed was negligent. It shortened the time for Schmidt to observe and appraise the situation. A longer time given for observation might well show him that the entire west half of the cement highway was unobstructed and that the tractor-trailer was proceeding straight up the shoulder.

By thus contributing to the emergency Schmidt is deprived of the "emergency" rule. *Deignan v. New Amsterdam Casualty Co.* (1958), 2 Wis. (2d) 480, 482, 87 N. W. (2d) 529; *Auster v. Zaspel* (1955), 270 Wis. 368, 71 N. W. (2d) 417.

There is much conflict in the testimony given by the various witnesses but among the versions of the material facts there is evidence sufficient to take to the jury the question of whether Schmidt's management and control was negligent and, if so, the negligence was causal. We conclude that there is competent, credible evidence to support such findings and we may not disturb them. This determines adversely appellant Schmidt's demand for a new trial on all issues. The trial court's denial of his motion was correct.

## *Schlei Dray Line's Appeal.*

Schlei Dray Line interpleaded as a codefendant the owner of the dump truck, Van Straten, his driver Matzke, and his insurance carrier. At the conclusion of the testimony the trial court dismissed Schlei Dray Line's cross complaint which had alleged causal negligence on the part of the dump truck operator contributing to the collision between the vehicles of Schlei Dray Line and Schmidt.

It appears from the testimony that after the semitrailer drew up alongside the dump truck in order to pass it and the driver of the semi, Vetting, discovered the presence of the grader, Vetting found himself unable to gain distance to pass the grader nor was there room enough between the grader and the dump truck to get in between them, and when he tried to slow down so as to fall in line behind the dump truck he was unable to do that because of road conditions. This appellant's theory is that Matzke had a duty to him to leave room or create room for him to pass to the east side of the road between his dump truck and the grader. He submits that this duty is both a common-law and a statutory duty. The statutes on which Schlei Dray Line relies are:

"85.32 DISTANCE BETWEEN VEHICLES. (1) *Following too closely.* The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway. The provisions of this subsection shall not prevent overtaking and passing nor does it apply to funeral processions.

"(2) DISTANCE BETWEEN SLOW-MOVING VEHICLES. The operator of any motor truck with gross weight over 10,000 pounds, or the operator of any motor vehicle which is drawing or towing another vehicle where the combined gross weight is over 10,000 pounds and operating upon a highway outside of a business or residence district shall keep the unit he is operating at a distance of not less than 500 feet to the rear of any vehicle immediately preceding it being

driven in the same direction. The provisions of this subsection shall not prevent overtaking and passing nor shall the same apply upon any lane especially designated for use by truck and tractor-trailer units."

As Vetting came up behind the dump truck for a few hundred feet he reduced his speed to some 35 to 40 miles per hour, the same as Matzke's. He then increased his speed by about five miles per hour, intending to pass Matzke, though he gave no warning signal of his intention.

It is apparent that Matzke would pass the slow-moving grader which he was rapidly overtaking as soon as he was close enough to do so in safety. This was his right and we consider that he violated no duties imposed on him by these statutes in coming up preparatory to passing though he was not yet in the act of passing. We have held in *Tesch v. Wisconsin Public Service Corp.* (1957), 2 Wis. (2d) 131, 136, 85 N. W. (2d) 762, citing *Thoresen v. Grything* (1953), 264 Wis. 487, 59 N. W. (2d) 682, that—

". . . a driver had no duty to the driver behind him except to use the road in the usual way, in keeping with the laws of the road, and that until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no other automobile in close proximity to his rear or that, being there, it is under such control as not to interfere with his free use of the road in front of and to the side of him in any lawful manner."

Up to the time when Vetting was alongside intending to pass Matzke there was no issue of any negligence on Matzke's part. Sec. 85.16 (4), Stats. 1955, declares that on a suitable and audible signal by the driver of the overtaking vehicle, the leading vehicle shall not increase its speed until the overtaking car shall have passed. Though Vetting gave no signal Matzke knew he was trying to go by. Therefore Matzke properly did not increase his speed.

Then Vetting gave up the attempt and tried to slow down, obviously to return to his former position. Reduction of Matzke's speed would frustrate that attempt. We concur in the decision of the learned trial court that the evidence as a matter of law will not impose negligence upon Matzke and his employer under such circumstances and impose a duty requiring them to guess what the overtaking driver intends to do and is capable of doing. Therefore we affirm the judgment which dismissed Schlei Dray Line's cross complaint against the dump-truck people.

*By the Court.*—Orders and judgment affirmed.

MARTIN, C. J., took no part.