Myhre, Appellant, vs. Hessey and another, Respondents.*

*March 10—April 13, 1943.*

---

* Motion for rehearing denied, with $25 costs, on June 15, 1943.

*Walter T. Norlin* of Washburn, for the appellant.

For the respondents there was a brief by *V. P. Davis,* attorney, and *Sanborn, Lamoreux & Pray* of counsel, all of Ashland, and oral argument by *Mr. Davis.*

FOWLER, J.   The action was brought to recover damages for malicious prosecution.   The complaint contains two causes of action, the first for prosecution of a criminal action, and the second for the prosecution of a series of civil actions. The jury, by general verdict, found for the plaintiff on both causes of action.   They did not assess the damages on each cause separately but assessed the damages for both at $1,000. The trial judge on motions after verdict held that the evidence supported the finding of the jury upon the first cause of action, although he expressed doubt about it; that it did not support the finding of the jury as to the second cause of

action because there was no evidence of interference with the person or the property of the plaintiff in the prosecution of any of the civil actions; and that as there was no separate assessment of the damages attributable to the first cause of action ordered a new trial of that cause of action. An order for a new trial on the first cause of action and a judgment dismissing the second cause of action were separately entered. The plaintiff appeals from both the order and the judgment and contends that he is entitled to a judgment for the damages assessed by the jury, because (1) the defendant moved for judgment notwithstanding the verdict, dismissing the complaint as to both causes of action, and the court expressly granted his motion as to the second cause of action, and because (2) the evidence supported the verdict for the plaintiff as to that cause of action.

The defendant moves for review of the court's denial of his motion for a directed verdict on the plaintiff's first cause of action and of the order granting a new trial on that cause of action.

The basis of plaintiff's contention (1) above stated is that a motion for judgment notwithstanding the verdict admits the facts found by the verdict, and the plaintiff was therefore entitled to a judgment on both causes of action. See *Volland v. McGee,* 236 Wis. 358, 294 N. W. 497, 295 N. W. 635. If this be correct, it does not entitle the plaintiff to a judgment on either cause of action because of the grounds laid by the trial judge in a written opinion for granting the new trial of the first cause of action. Those grounds were two: (a) That the damages assessed by the jury included those assessed for the second cause of action, so that there was no finding as to the damages sustained upon the first cause of action; and (b) that the court was "very doubtful as to whether" the evidence supported a verdict on the first cause of action. The "doubt" of the trial judge as to the latter cause of action justified his granting a new trial on the first cause of action in the interest of justice, on his own motion, although such

ground was not laid by the defendant. *Estate of Noe,* 241 Wis. 173, 5 N. W. (2d) 726. The granting of a new trial in the interest of justice is discretionary and a court's order therefor will not be disturbed except for abuse of discretion (see Callaghan's Wis. Dig. 1st Supp. p. 1309. sec. 4), unless it is based upon an erroneous view of the law. *Huebner v. Fischer,* 232 Wis. 600, 288 N. W. 254. A new trial being granted on the first cause of action leaves no basis for judgment on the verdict upon the second cause for want of an assessment of the damages attributable thereto.

The main claim of the defendant respecting the first cause of action is that the defendant made a full and fair statement of the facts to the district attorney, and on those facts the district attorney advised that the criminal action would lie, and defendant in good faith relied on that advice. The criminal complaint charged larceny as bailee by the plaintiff of twenty-four head of cattle belonging to the defendant by disposing of the cattle and converting the proceeds to his own use. The defendant states that he told the district attorney all the facts, but does not mention many specific facts that he told her, and the specific facts he says he told her and the specific facts that the district attorney says he told her do not in all respects agree. It does not appear that the terms of the contract between the parties were told to the district attorney, and some of these terms have direct bearing upon whether if twenty-four head of cattle were moved by the plaintiff, the removal by him constituted larceny. The contract involved is to continue during the life of the survivor of defendant and his wife and the second parties of whom plaintiff is one are to pay $1,000 each year to the first parties or the survivor and at the death of the survivor the second parties are to become the owners of a farm of the defendant and the stock and machinery included in the contract if the terms of the contract are complied with by the second parties. One of the terms of the contract is that second parties are

to keep the listed livestock up to "normal or better" which would seem to imply or at least justify the belief of the second parties that they had the right to dispose of listed livestock and replace it by other stock. The defendant testified that twenty-four head of cattle involved in the complaint were beef cattle and listed property. The district attorney testified that the defendant told her they were unlisted property. There was left on the farm besides the listed cattle a large number of cattle not listed, which belonged to the defendant and in which the plaintiff could claim no right of removal. It also appears that the defendant prior to the institution of the criminal action had brought an action of forcible detainer against the plaintiff and the other second party in which he claimed forfeiture of the contract. We think these matters warranted the jury in rejecting the defense of reliance on the advice of the district attorney and finding upon the whole evidence both want of probable cause and malice in instituting the criminal action. The criminal action was dismissed by the district attorney after the trial and dismissal in circuit court of the forcible-detainer action on appeal of it to that court. The dismissal was by the district attorney without consent or knowledge of the defendant because she did not think she could produce evidence to convict, but such a dismissal·satisfied the rule that dismissal of a criminal action is a necessary prerequisite to an action for malicious prosecution of it. We consider that the evidence raised a jury question on the first cause of action and the defendant's motion for a directed verdict was properly denied, and that the defendant had no cause of complaint because the court ordered a new trial of that action.

The most serious question in the case arises under the defendant's contention and the trial judge's ruling that the evidence does not raise a jury question as to the second cause of action. The trial court based its ruling in this respect on the view of the effect of the rule stated in *Luby v. Bennett,*

111 Wis. 613, 87 N. W. 804. That rule is stated in paragraph 6 of the syllabus which was written by Mr. Justice MARSHALL who wrote the opinion. The rule will for convenience be hereinafter referred to as "Syl. 6." It reads:

"The general rule which prevails in England, and has the greater support of judicial and elementary authority in this country, is that a civil action, maliciously prosecuted, where neither the person nor the property of the defendant is interfered with inflicting special damages to him, will not sustain an action for malicious prosecution."

The basic action in the *Luby Case, supra,* was to dissolve a partnership and at its commencement the plaintiff who was a partner of the defendant had himself appointed as receiver and as such took exclusive possession of the partnership property and business. There is no evidence in the instant case of interference with plaintiff's person or property in any of the basic civil cases involved, unless the expense of defending those actions be considered as interference with his property. The plaintiff claims that $600 was so expended by him, and a considerable sum was so expended by him in each of them. All of the decisions pro and con, bearing on the rule of Syl. 6 decided up to the time of the decision of the *Luby Case* seem to be cited in the opinion therein. The last case cited in the instant briefs bearing upon that rule is *Peckham v. Union Finance Co.* (App. D. C.) 48 Fed. (2d) 1016, 1018, decided in 1931, a decision of the court of appeals of the District of Columbia. It was there squarely held that malicious prosecution does not lie for prosecution of a civil action where neither the arrest of the plaintiff nor seizure of his property occurs, and many cases so holding, including the *Luby Case,* are cited in the opinion in that case.

The appellant cites two cases to the effect that whenever the prosecution of a civil action is malicious and without probable cause, action lies for prosecution of it. *Kolka v.*

*Jones* (1897), 6 N. D. 461, 71 N. W. 558; *Severns v. Brainard* (1895), 61 Minn. 265, 63 N. W. 477, 478. He also cites *Shedd v. Patterson* (1922), 302 Ill. 355, 134 N. E. 705, to the point that even though in Illinois the rule that there must be interference with person or property applies in case of malicious prosecution of one civil action, it does not apply in case of malicious prosecution of several, and that the action lies in that state when several civil actions were maliciously prosecuted against the plaintiff by the defendant, although there was no interference with either person or property.

The express point on which the trial court dismissed the instant second cause of action is that the plaintiff suffered no damage from the prosecution of the civil actions because, as he considered, under the rule of Syl. 6 the costs adjudged against the defendant in those actions compensated him for the expense of defending them.

That the costs should be so considered is an open question in this state because, while the matter of costs is treated at length in the opinion of the *Luby Case, supra,* there is no definite statement in the opinion declaring the law on the point and the point was not directly involved, for in that case the plaintiff's property rights were interfered with, and because the Restatement of the Law of Torts gives the expense of defending the basic civil action as an element of damage recoverable in an action for malicious prosecution of that action. The effect of the award of costs being the point upon which the case really turns makes necessary a somewhat particular discussion of it.

The bearing of the award of costs to the defendant in the basic action is discussed in the *Luby Case* opinion at pages 619 to 624. At the conclusion of the discussion Cooley on Torts (2d ed.), 219, is quoted:

"He [Judge COOLEY] confines the civil actions that may support one for damages for malicious prosecution by the settled law, to maliciously instituting and prosecuting pro-

ceedings in bankruptcy, suits in which the defendant is ar-
rested, suits in which the property of the defendant is attached,
and proceedings to have a party declared insane and placed
under guardianship. He says, as to other civil actions:

" 'In some cases it has been held that an action may be main-
tained for the malicious institution without probable cause of
any civil suit which has terminated in favor of the defendant;
but the English authorities do not justify this statement, and
there is much good reason in what has been said in a Pennsyl-
vania case (*Mayer v. Walter,* 64 Pa. St. 283), that "if the
person be not arrested or his property seized, it is unimportant
how futile and unfounded the action might be; as the plain-
tiff, in consideration of law, is punished by the payment of
costs." If every suit may be retried on an allegation of
malice, the evils would be intolerable, and the malice in each
subsequent suit would be likely to be greater than in the first.'
Cooley, Torts (2d ed.), 219."

In addition to the basic actions specifically mentioned in the
above quotation from Cooley on Torts, *supra,* should be added
equity cases wherein plaintiff is excluded from possession of
his property through its being turned over to a receiver, as
in the *Luby Case, supra;* and perhaps juvenile court proceed-
ings wherein a child is charged with being a "delinquent
child" and "incorrigible." The opinion seems to imply that
preferring such a charge maliciously and without probable
cause would of itself constitute basis for a malicious-
prosecution action. But as the plaintiff was arrested in that
case the action lay under Syl. 6 anyhow, and the statements
indicating that it would lay without arrest are *obiter.* The
*Luby* opinion cites *Ray v. Law,* Pet. C. C. 207, as the first
American decision following the English rule "to the letter."
That case states the rule as above quoted from *Mayer v.
Walter, supra,* and holds that because thereof "the defendant
is not materially injured."

It should be noted that the rule of Syl. 6 has not yet been
adopted in this state. This appears from the statement in
the *Luby Case* opinion, page 625, that the proposition stated

in Syl. 6 "ought not to receive approval as the law of this state without the most careful consideration of the subject in a case necessarily depending upon a correct solution of it." This is such a case, and no other case has heretofore been before this court. That rule seems to have been considered "as sound" although not directly involved, in *Lueptow v. Schraeder,* 226 Wis. 437, 443, 277 N. W. 124. The trial court applied the rule of Syl. 6 in *De Vries v. Dye,* 222 Wis. 501, 269 N. W. 270, but this court decided the case on another point without considering that rule. In considering whether it should be adopted as the settled law of this state it should be noted that the Restatement of the Law, Torts, is apparently contrary to it. Vol. 3, sec. 674, of that Restatement states the rule to be that instituting a civil proceeding creates liability for harm done *if* (a) instituted (1) without probable cause and (2) primarily for purpose other than securing adjudication on the claim involved, and (b) (except where *ex parte*) the proceedings have terminated in favor of the person against whom they are brought. Comment *Fourth* states, page 442, that the plaintiff under this section must show *either* material harm or violation of a legal right in itself sufficient to support an action for damages.

Under the rule of sec. 674, sec. 681 of vol. 3 states the damages that are recoverable as resulting from the prosecution of the basic civil action as: (1) Harm by interference with personal property; (b) harm to reputation by reason of defamatory matter alleged as basis of the suit; (c) expense reasonably incurred in defending; (d) specific pecuniary loss; (e) distress caused by the proceedings.

It appears that under the rules as stated in the Restatement no damage resulted to the plaintiff from prosecutions of the civil actions unless the cost of defending them be considered an item of such damage. One of the actions laid as basis of the instant action is an action in replevin. In such an action property of the plaintiff in malicious prosecution is ordinarily

seized under the writ and interference with his property thus occurs, but it appears from a statement in the opinion of the circuit judge that this action was pending in the circuit court at the time of the instant trial. Thus (a) of said sec. 681, "Harm by interference with personal property" is not involved. As to (b) under said section, no defamatory matter appears to have been stated in any of the three other basic actions pleaded, so no damage to reputation is involved. As to (d) and (e), under said section, there is no evidence of any "specific pecuniary loss" or of "distress." This leaves (c) under said section the only possible basis of awarding damages to the plaintiff under the second cause of action.

It appearing from the above quotation from page 625 of the *Luby Case* opinion that the court disclaimed intent to adopt the rule of Syl. 6 as the law of this state, it is for the court now to adopt that rule or the rule of the Restatement, whichever appears to the court more in accord with public policy. The matter seems to depend on which the court considers the less evil: Subjecting individuals to the expense of defending groundless civil actions prosecuted maliciously and without probable cause, or subjecting individuals who lose lawsuits which they institute to the possibility of malicious prosecution actions because they lost them, and subjecting the courts and the public to a possible flood of such actions that may follow adoption of the Restatement rule. In 34 Am. Jur. p. 707, sec. 10, it is stated, in effect, that in this country the law is in conflict as to whether the rule of Syl. 6 or of the Restatement obtains. It is pointed out in sec. 9 of the text last cited that prior to the enactment of the statute of Marlbridge, 52 Henry III, enacted in 1267, an action lay for malicious prosecution of a civil action without probable cause; that that statute gave costs to the successful defendant, not as a general statute regulating costs, but "to afford a summary remedy to the successful defendant in place of the existing right of action to recover his damages on account of the malicious prosecu-

tion of a civil action against him," and that after the passage of that statute the rule of Syl. 6 was generally applied by the English courts because the costs recovered were considered adequate compensation for the damages suffered. Sec. 10 further points out that many American courts apply the rule of Syl. 6 while many others reject it in favor of the rule declared in the Restatement. Some of the latter cases apply the Restatement rule on the express ground that the costs imposed under the English practice include attorney fees both for preparing the basic case for trial and for trying it (*Pope v. Pollock*, 46 Ohio St. 367, 21 N. E. 356, 4 L. R. A. 255), while in this country generally no attorney fees are included in the costs and where they are, as in Wisconsin, they are so small as to bear no relation to the expense of the plaintiff in defending as costs under the English practice, and the rule of Syl. 6 should therefore not be adopted. It should be noted that the statute of Marlbridge was enacted to cure a multitude of evils that existed in the administration of justice in England at the time of its enactment. It is divided into thirty-nine headings, each dealing with a separate subject. One of those evils apparently was the malicious prosecution of civil actions without probable cause. The only reference to malicious prosecutions that we find in the statute is in par. II of cap. VI thereof, p. 60, vol. 1, English Stats. at Large, where the English translation given reads as follows:

"And if any chief lords do maliciously implead such feoffees, faining this case, namely, where the feoffments were made lawful and in good faith, then the feoffees shall have their damages awarded, and their costs which they have sustained by occasion of the foresaid plea, and the plaintiffs shall be grievously punished by amerciament."

Thus under that statute costs were not only imposed that "grievously punished" the defendant "by amerciament" but plaintiff's damages not covered by the imposition of costs

were also awarded. This view is expressly declared in *Kolka v. Jones, supra,* where at page 560 of the North Western Reporter opinion the development of the rule of Syl. 6 under later statutes is elaborated.

We conclude that as a matter of public policy the rule of Syl. 6 is the sounder, and we therefore adopt it. We do not mean to say that a civil action involving a charge of defamation prosecuted maliciously and without probable cause may not form the basis for an action for malicious prosecution, although there was no interference with the person or property of the plaintiff in course of its prosecution. No such case is before us and we leave the point for decision in a case involving it.

Mention is made above of *Shedd v. Patterson,* an Illinois Supreme case, which holds that although a single civil action maliciously prosecuted will not support an action for malicious prosecution unless there is interference with the person or property of the plaintiff, the rule does not apply where there are several such prosecutions. We do not perceive that a different rule should apply in case of a series of civil actions than in the case of one. The inference of malice, under all the facts, may be stronger in a case of a half-dozen actions all resulting in favor of the plaintiff than in a single case. But malice has no causal relation to interference with plaintiff's person or property. The reason for the fundamental proposition that the action does not lie except there be interference with property or person applies just the same whether one basic action is involved or more than one. In none of the civil actions here involved was plaintiff's person or property interfered with. This renders unnecessary discussion by the court of other matters discussed in the briefs. The judgment dismissing the second cause of action is affirmed.

*By the Court.*—The judgment dismissing the second cause of action and the order granting a new trial of the first cause of action are affirmed.