ALBRECHT, Respondent, vs. TRADEWELL and another, Appellants.

*November 8—December 6, 1955.*

For the appellants there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham*.

For the respondent there was a brief by *Schmitt & Gullickson* of Merrill, and oral argument by *Leonard F. Schmitt*.

GEHL, J.   The principal contention of the defendants is that, assuming that there is testimony supporting the jury's findings of negligence on the part of each of the actors, nevertheless it should have been found by the court as a matter of law that the negligence of the plaintiff was equal to or greater than that of the defendant Tradewell. That contention requires that we state the testimony in some detail.

The accident occurred on Sunday, September 16, 1951, between 7:30 and 8 p. m. on Highway 45, a north-and-south road, in the unincorporated village of Summit Lake in Langlade county.   The highway is level in and for a distance of about 440 feet north of the village, the scene of the accident. There are a number of business places on the west side of the road; open fields adjoin it on the east.   It was dark and clear.

The plaintiff, Edward Albrecht, lived in the village on the east side of the highway and opposite the tavern and restaurant, to which reference will be made.   He testified that during the forenoon of the day in question, he drank a "couple of beers," went home to dinner, dug potatoes in the afternoon until about 5 p. m., and then went to Fossbender's tavern, where he drank three or four shell glasses of beer.   The operator of the tavern testified that when he left it at about 6 p. m. Albrecht did not appear to be under the influence of liquor. He left the tavern for his home and when he found that his family had eaten supper, went to the Uno tavern and restaurant on the west side of the road for a bowl of soup. His daughter, Beverly, aged thirteen years, accompanied him to the restaurant and testified that he was not under the influence of liquor, that he looked and acted O. K.   Albrecht denied the testimony of a witness who stated that he had been refused a drink by the bartender at the Uno tavern which was operated in connection with the restaurant.   He left the

restaurant at about 7:30 p. m. for his home across the highway.

From that point the testimony is in conflict. Plaintiff and his daughter testified that there was one car parked on the west side of the highway to the north of and about 20 feet from the door of the restaurant, and one parked to the south of the door. He said that the north car was parked "pretty well up toward the restaurant building," the front of which was 28 feet from the west edge of the concrete, thus permitting a jury to infer that the rear of the car was from seven to 10 feet from the west edge of the concrete.

The defendant, James Tradewell, accompanied by his wife and children, was driving his automobile south on Highway 45 approaching the village. He testified, upon his direct examination, that as he approached the village he reduced his speed to between 30 and 35 miles per hour, the legal limit in the village being 35 miles per hour, and dimmed his headlights; when he was 100 or 150 feet north of the Uno Club he saw plaintiff walk out of it, but lost sight of him when he disappeared between the cars parked at an angle between the concrete portion of the highway and the building; the rear ends of the cars were between two and four feet from the concrete portion of the highway; he assumed that plaintiff was planning to enter one of the parked cars; when his car was between 30 and 35 feet from the scene of the accident, Albrecht stepped out from behind one of the parked cars, (upon cross-examination he testified that when Albrecht stepped out he, Tradewell, was between 15 and 20 feet from him); Albrecht walked (on another occasion that he staggered) in a southeasterly direction onto the road without looking in Tradewell's direction; Albrecht did not stop but kept right on going across the road; he, Tradewell, was then traveling at the rate of about 30 miles per hour; he applied his brakes and swung his car sharply to the left shoulder;

he struck plaintiff and stopped his car 16 or 17 feet south of the point of impact and on the east side of the highway; he did not recall that he did or did not blow his horn; when his car struck Albrecht it was just east of the center line of the highway; the front side of his right fender struck the plaintiff; no part of the front of his car struck him; he "came up over the fender" and his right shoulder hit the lower part of the right windshield; there was no car coming from the south; after the accident there were no marks on his car except on the right front fender and on the windshield.

Mrs. Tradewell, who occupied the front seat of the automobile with her husband, gave testimony substantially the same as that given by her husband, and added that when she saw Albrecht leaving the Uno Club, her husband blew his horn, and that when she saw Albrecht enter upon the concrete, she said to her husband, "for heaven's sake, the man is drunk," or some such thing.

Gordon Handyside, a deputy sheriff called to the scene of the accident, found skid marks which started at the point where Albrecht lay just west of the center line of the highway and ran southeasterly 30 feet.

Ray Feller, the sheriff, testified that he was called to the scene of the accident and found Albrecht lying on the west side of the highway near the center line; he detected the odor of some alcoholic beverage but could not tell what it was; he found a dent in the right front fender of Tradewell's car eight to 10 inches to the rear of the headlight and that the right side of the windshield was shattered; he saw no skid marks on the evening of the accident; on the next day he took some photographs of the roadway upon which he found no indication of any skid marks in the area of the accident.

Alfred Lunz, called by the defendants, testified that he followed Tradewell and entered the village of Summit Lake at a speed of about 35 miles per hour; the distance between

the two cars was from 175 to 200 feet; he saw Albrecht step out from behind the parked cars and start to cross the road; the distance between the rear of the parked cars and the concrete pavement was about two or three feet; when he first noticed Albrecht walking at the edge of the highway he saw the Tradewell car swerve to the left; when it swerved Albrecht was on the concrete; the car went to the left side of the road and its left wheels were on the shoulder; he saw Albrecht "fly up and land on the concrete," at which moment the left wheels of the car were on the left shoulder.

Mrs. Lunz, also called by the defendants, was riding with her husband, added that when Albrecht appeared from behind the parked cars he walked with his head down directly to the concrete and did not turn his head; he did not turn back to the west; he continued walking until he was struck; Tradewell pulled his car to his left when Albrecht walked into the highway; she saw no car coming from the south; the Lunz car was stopped with its front end two or three feet north of where Albrecht lay and the Tradewell car was stopped about two car lengths south of the Lunz car.

Gilbert Powell, called by the defendants, testified that he arrived at the scene of the accident while Albrecht still lay on the highway; he smelled intoxicating liquor on his breath; he saw skid marks between 25 and 30 feet long starting on the west side of the highway, and angling to its east side.

Albrecht's testimony and that of his daughter are quite different than the foregoing. He testified that he left the restaurant with his daughter, Beverly, headed for his home across the road; before he went onto the highway he looked north and saw no car—no lights; when he approached the center of the road he looked to his left and saw no car coming but saw one coming from the south at a pretty good speed; after the northbound car passed him he proceeded toward the center of the road; there was no crosswalk in the village; when the northbound car was opposite him he looked

to his left and saw the Tradewell car, which was then about 35 feet north of him and on its own side of the road; he turned to his right to return to the west side of the road, to the Uno Club; he was struck as he was turning and was then about two or three feet from the west edge of the pavement; the front bumper of the car struck him; his left leg was broken about one third the way up to the knee; when the Tradewell car was 30 to 35 feet from him it was traveling between 65 and 70 miles per hour.

His daughter testified that she was employed at the restaurant on the day in question and had served him the bowl of soup which he had there; she left the restaurant with him and stood near the door watching her father as he entered the highway, and was waiting for the northbound car to pass; she saw the lights of the Tradewell car approaching, speeding; she saw the collision which occurred at about the center of the road; after the Tradewell car struck her father it swayed down the road about a block; as her father went into the highway he was walking with his head up; there were two cars parked at an angle on the street, one of them 15 or 20 feet to the north of the Uno Club, and the other to the south thereof; she did not hear the squealing of brakes nor the blast of a horn. Upon cross-examination she testified that the Tradewell car was not turned to the east until after the collision; her father had turned to come back toward the west when he was struck; he could not have gotten out of the way of the Tradewell car because it was coming too fast, and he could not have continued going east because of the presence of the northbound car; the Tradewell car was on the west side of the highway at the time of impact; when the northbound car passed her father it was swung to the east. Upon redirect examination she testified that she observed no change in the speed of the Tradewell car before it struck her father.

The contention is that upon the facts developed the court should have found, as a matter of law, that plaintiff's negligence was equal to or greater than that of the defendant Tradewell. The foregoing recital of the testimony makes it quite clear that there was a sharp conflict and that there were presented issues for determination by the jury. If they believed Albrecht's story, as they had the right to do and apparently did, they were fully warranted in apportioning negligence as they did. The citing of authorities in support of the respective contentions of the parties is not of much help. Each case must be determined upon its own facts. Manifestly, the jury believed plaintiff's story that he had nearly reached the center line of the concrete when Tradewell's car was still some considerable distance to the north of him, and that Tradewell was traveling at a highly excessive rate of speed; they also had for consideration Tradewell's testimony that he did not see plaintiff until he was between 30 and 35 feet from him; that he did not blow his horn; and that he did not swerve his car to the right or left until it was too late to avoid the collision.

This is not a case in which the jury was required to find that plaintiff stepped into Tradewell's path in such manner or at such time that Tradewell could do nothing to avoid the accident. From the testimony of the plaintiff, which we may not say is incredible, the jury could and apparently did infer that Tradewell should have seen him earlier and in time to have permitted him to so control his car as to avoid a collision, or that he did not see plaintiff until it was too late to act for plaintiff's safety. Under those circumstances we may not say that the negligence of the plaintiff was as great as or exceeded that of Tradewell. *Grohusky v. Ferry* (1947), 251 Wis. 569, 30 N. W. (2d) 205.

Some time after plaintiff had rested his case, counsel for defendants moved that the testimony of the plaintiff as to the speed of the Tradewell car be stricken upon the ground that

he testified that he did not see. the automobile until it was only 35 feet from him and coming directly at him. The court did not err in denying the motion. "It was receivable and for the jury to give it such weight as they saw fit." *Benedict v. Berg* (1938), 229 Wis. 1, 6, 281 N. W. 650. *Fessler v. Northwestern Nat. Casualty Co.* (1953), 265 Wis. 14, 18, 60 N. W. (2d) 387, is not authority for defendant's contention, for there it was said by the court that the witness "admitted he was in no position to judge speed and could not estimate it."

Defendants contend that the questions of the verdict which inquire as to Tradewell's conduct are duplicitous. We do not agree. Counsel's objection at the trial to the form of verdict was made before the case was submitted to the jury, and was made in the form of a motion to strike from the proposed verdict the inquiry as to management and control by Tradewell. The jury was entitled to conclude that Tradewell did or should have seen plaintiff upon the concrete portion of the highway when he was a substantial distance from him, and in time to have effectively applied his brakes or swerved his car so as to avoid a collision. Thus, there was presented the issue of management and control. *Schroeder v. Kuntz* (1953), 263 Wis. 590, 58 N. W. (2d) 445. If he had been traveling as slowly as he testified he did, he might also have reduced his speed so as to enable him to stop before striking plaintiff. His failure to further reduce his speed was properly considered by the jury as a matter of control and management. *Jennings v. Mueller Transportation Co.* (1955), 268 Wis. 622, 68 N. W. (2d) 565.

Defendants contend that it was error to permit plaintiff to testify as to the reason for the absence of a possible witness. There was no objection to the receipt of the testimony.

*By the Court.*—Judgment affirmed.