Bolssen and others, Appellants, vs. Heenan and another, Respondents.

*January 8—February 4, 1958.*

For the appellants there was a brief by *Thomas B. McKenzie* and *Cain & Herrling,* all of Appleton, and oral argument by *Mr. McKenzie* and *Mr. Don R. Herrling.*

For the respondents there was a brief by *Harry P. Hoeffel* of Appleton, for Arthur W. Bolssen, and by *O'Leary & Joyce* of Neenah, for James P. Heenan and the Commercial Insurance Company of Newark, and oral argument by *Mr. Hoeffel* and *Mr. E. C. Joyce.*

STEINLE, J.   The question presented is whether the trial court abused its discretion in setting aside the verdict of the jury and ordering a new trial on all issues.

The automobile collision in question occurred at about 12:30 p. m., on November 26, 1955, at the intersection of Linwood avenue and Packard street in the city of Appleton. Linwood avenue extends north and south and Packard street east and west. The plaintiff Arthur W. Bolssen was operating his 1949 Mercury automobile in a northerly direction on Linwood avenue. The defendant James P. Heenan was driving his 1951 Buick car in a westerly direction on Packard street. The road conditions generally were icy

excepting for some dry spots on Packard street. It appears without dispute that Bolssen did not observe the Heenan car (which was approaching from his right at the intersection) until a moment before the collision which occurred in the northeast quarter of the intersection. Bolssen was traveling at the rate of about 15 to 20 miles per hour and Heenan's car was moving at the rate of 20 to 30 miles per hour— possibly more than 25 miles per hour. Heenan saw the Bolssen car when it was about 50 feet south of Packard street on Linwood avenue. He applied his brakes and tried to slow his speed but because of the presence of icy patches on the street as to which he had been previously aware, and because he was fearful of skidding, he did not slacken his speed sufficiently to avoid the collision. The jury determined that Bolssen was negligent with respect to lookout and as to yielding right of way. Heenan was found to have been negligent in relation to management and control. 75 per cent of the negligence was apportioned to Heenan and 25 per cent to Bolssen.

At the time of the accident Arthur W. Bolssen operated a farm and worked in a factory. His wife, Alice, had been doing heavy work on the farm besides taking care of her housework. James P. Heenan is a truck driver. Neither Arthur W. Bolssen nor James P. Heenan was injured in the collision.

At the time of the collision Alice Bolssen was riding next to her husband in the front seat of his automobile. The daughter, Mary, age fifteen, also sat in the front seat,—to the right of her mother. The son James, age six, was riding in the rear seat. Shortly after the collision but on the same day Alice Bolssen took the children to Dr. Swanton. That physician upon examination concluded that Mary had been hit in the right temple. He also found that there was a swelling below the right knee and over the fibula. There was no hemorrhage—no laceration. Dr. Swanton found

that the son James had two bumps on his forehead with a little swelling. At the trial Dr. Swanton testified that he saw Mary on three occasions. He stated that on December 12, 1955, he noted that she had a moderate bursitis in the right knee and concluded that she would completely recover. He saw her at the time of the trial and testified that she had recovered. With respect to the son James, Dr. Swanton testified that while he had noted a thickening of the periosteum, he expected complete recovery.

On the day when Alice Bolssen first took the children to Dr. Swanton's office she made no complaint that was noted by Dr. Swanton as to her own situation. Three days later she returned to the physician's office for further examination and treatment of the children. At that time she complained of pain to her back. Dr. Swanton, upon examination, including X ray, determined that she was suffering from a congenital condition—a fusion of some of the lumbar vertebrae. He recommended heat treatment and the wearing of a binder. She purchased and wore such binder. She visited Dr. Swanton only once thereafter—December 12, 1955. At the trial Dr. Swanton testified that he "wouldn't expect any permanent disability as a result of this accident."

At the trial Mrs. Bolssen testified in part that in January, 1956, she consulted Dr. Marshall, having been referred to him by her attorney. Specifically in direct examination she testified as follows:

"In the last part of January I went to Dr. Marshall and he treated me until last November. He told me to get a back brace from Neenah and wear it all the time and to put boards under my mattress and to take hot baths every day. I did what he told me but it didn't clear up. The back brace does help. It seems to stiffen me up. I have tried to go without the brace but it is just like if my hip and legs go limp."

In cross-examination she testified as follows:

"Dr. Marshall took X rays. He didn't tell me what was the matter. Dr. Marshall didn't give me any treatment, by that I mean he didn't rub anything on my back, or give me light treatments or anything of that kind. I haven't to this day had any treatments from Dr. Marshall."

At the trial Dr. Marshall testified *inter alia* that it was his impression that Alice Bolssen had suffered a back strain when involved in the automobile accident; that such strain was superimposed on a pre-existing early arthritis; that he had felt that the use of a good garment-type support with steel stays, plus continued observation to determine if additional treatments were necessary, should be carried out; that in February, 1956, she had a spell of burning sensation and vomiting while under treatment, with pain under the right breast which simulated a gall bladder attack; that the stomach condition was an entirely separate affair from what he found in her low back; that he did not feel that there is any permanent disability relating to the accident, and that she had completely recovered from any effects of the accident; that the healing period had passed on October 22, 1956.

· Dr. Gmeiner, an orthopedic surgeon, examined Mrs. Bolssen shortly before the trial. He did not treat her. At the trial he testified *inter alia* that Mrs. Bolssen was suffering from a congenital defect in the lumbosacral area in which there was a sacralization of the sixth lumbar vertebra; that he found no evidence of muscle atrophy or trauma; that he found no objective evidence of any pain in her back; that he found no muscle spasm there; that in his opinion Mrs. Bolssen sustained some damage to her low back area at the time of her injury on November 26, 1955; that in his opinion she had a minimum of 15 per cent disability (in her back) based on the body as a whole. Specifically Dr. Gmeiner also testified:

"As far as the tests I gave Mrs. Bolssen are concerned I found no evidence of pain or injury in the back. I specialize

in orthopedic surgery. Backs and joints and bones are my specialty. I gave Mrs. Bolssen all the tests known to my profession to determine whether or not I could find any objective findings as to injury to the back and I found no objective evidence of injury to that low back. I did find a congenital defect in the lower lumbar vertebra region where they have grown together. That condition has been there since birth and makes for a weak back. My recommendation for a person who had pain because of a congenital defect would be braces to relieve discomfort and if there is no response to that treatment, spine fusion is frequently very beneficial. Those backs sometimes just don't last through one's lifetime without giving pain. I have seen people that do, though. It helps if the person who has that kind of back is not required to do hard work. They can get through life on easy work. A back like that—especially in a woman like Mrs. Bolssen as I have seen her—should not do hard work on a farm, plowing, milking eight or ten cows, carrying milk, and doing that type of work if it is with complaints. She should be restricted whether or not that back was ever injured. If I saw a back like that before there was any complaint and knew that the person was doing hard work I would instruct them in the proper ways of lifting and bending. It often happens that people with backs like that don't know it and until it begins to bother, and an X ray is taken, then for the first time they know they had it all their lives. Heavy work is injury to a congenital back and can result in back trouble. It doesn't take any outside trauma to do it."

It is well settled in this state that a new trial granted in the interests of justice is a highly discretionary order, and that, while it is not beyond the power of this court to review it, nevertheless in order to reverse, it must clearly appear that there was an abuse of discretion. See *Alexander v. Meyers* (1952), 261 Wis. 384, 386, 52 N. W. (2d) 881.

In *Kies v. Hopper* (1945), 247 Wis. 208, 211, 19 N. W. (2d) 167, this court cited with approval the language in *McCoy v. Terhorst* (1926), 188 Wis. 512, 517, 518, 205 N. W. 420, that:

" 'In such cases we do not reverse merely because, upon the record before us, we come to a different conclusion. It must clearly appear that there was an abuse of judicial discretion before we reverse. In *John v. Pierce,* 176 Wis. 220, 224, 186 N. W. 600, the rule is thus stated: "A discretion is vested in the trial court to grant a new trial when he feels that the verdict is against the weight of evidence, and this court will not disturb his action in that respect where the evidence is such that conflicting conclusions may be reached by different persons," . . . Trial judges must be left free, nay, must be encouraged, to exercise a sound judicial discretion in such matters. The rights of neither parties are concluded by granting a new trial. Both have a right to submit their respective claims to a new tribunal, believed by the trial judge better qualified to pass thereon.' "

In *Guptill v. Roemer* (1955), 269 Wis. 12, 19, 68 N. W. (2d) 579, it was said:

"A trial court has the right in the exercise of its discretion to order a new trial in the interest of justice when a jury's comparison of negligence is against the great weight of the evidence even though it cannot be held as a matter of law that one of the tort-feasors was guilty of at least 50 per cent of the aggregate negligence. *Johnson v. Viebrock* (1953), 263 Wis. 284, 289, 57 N. W. (2d) 337. In his opinion in such case Mr. Chief Justice FRITZ stated:
" 'If the trial court had been of the opinion that the finding of only 10 per cent of the total causal negligence was attributable to Johnson, was against the greater weight of the evidence, the trial court could have granted a new trial in the interests of justice on such ground. However, the trial court failed to exercise such discretionary right, and the granting of a new trial on such ground is peculiarly within the discretion of the trial court.' "

In *Guptill v. Roemer, supra,* the trial court was of the opinion that the amount of damages awarded to the plaintiff for his personal injuries was greatly inadequate in view of the medical evidence that had been presented. The court

set aside the jury's verdict in the interest of justice and granted a new trial. The ruling was affirmed in this court. Manifestly the same principle and procedure are applicable when it appears to the trial court that the damages are grossly excessive, the record furnishing basis for such view. In *Larson v. Hanson* (1932), 207 Wis. 485, 488, 242 N. W. 184, a new trial was granted in the interest of justice partly on the ground that the damages were excessive. This court said: "We think there was no abuse of discretion here. The damages in this case were clearly high."

In *Sichling v. Nash Motors Co.* (1932), 207 Wis. 16, 21, 238 N. W. 843, application was addressed to this court to set aside an order of the trial court directing a new trial in the interest of justice on the ground that such order constituted an abuse of discretion. Mr. Chief Justice ROSEN- BERRY, speaking for the court, there said:

"We have frequently commented upon the highly discretionary character of an order granting a new trial in the interest of justice. The exercise of this discretion is the only thing that stands between the litigant and judgment upon an unjust verdict under our system of jurisprudence. . . . He [the trial judge] was quite evidently surprised by the verdict in this case, and in his opinion, in the interest of justice, a new trial should be had before another jury. Sitting here, viewing this matter in the light of a printed record, knowing as every judge and practicing lawyer knows of the many things which operate to affect a jury's determination in a given case, we cannot say and should not say that the judge in this case abused his discretion."

In the case at bar the jury's finding as to comparison of negligence was grossly disproportionate, and it cannot be permitted to stand. The respondents contend that Arthur W. Bolssen's negligence was at least as great as that of Heenan, and that as a matter of law they are entitled to such adjudication. As has repeatedly been declared by this

court, each automobile accident case must be decided upon its own peculiar facts. Under circumstances as here we are of the opinion that the comparison was for the jury. The proportions as found, however, were not within reasonable limitations.

A consideration of the medical evidence leads us to the same conclusion reached by the trial court, viz., that the amounts of damages assessed particularly for the injuries sustained by Alice Bolssen together with attendant damages to the husband for said injury, were excessive. We do not find ourselves in disagreement with the opinion expressed by the trial court in its decision on motions after verdict that:

"The award of damages to the plaintiff, Alice Bolssen, is, in the court's judgment, excessive to the point that the award is beyond the great weight and preponderance of the evidence. She sustained a strain of the back imposed upon a pre-existing early arthritis. According to her attending physicians complete recovery had occurred from the effects of the trauma. The court does not feel that the expert called on her behalf had sufficient information from his examination, in the absence of objective findings, or from the hypothetical question presented to him, to determine with any degree of accuracy specific permanent results to her from the trauma. In the court's judgment the award is grossly disproportionate to her injuries and residuals if any.

"The same may be said of the amount awarded to the plaintiff, Arthur Bolssen, for the loss of services of his wife. This award, in the court's judgment, is excessive and grossly disproportionate to his loss resulting from his wife's trauma."

The trial court also was of the opinion that the perverseness of the jury permeated the entire verdict, including the findings as to amount of damages for the injuries to the children. Such view does not appear to be contrary to the matters of record.

After having carefully scrutinized the evidence and considered the same, we are constrained to hold that the trial court did not abuse its discretion when it directed a new trial in the interest of justice.

*By the Court.*—Order affirmed.