MILLAY, Appellant, v. MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY and another, Respondents.

*February 7—March 5, 1963.*

For the appellant there were briefs by *Bonk, Lutz & Hertel* of Chilton, and oral argument by *Robert W. Lutz*.

For the respondents there was a brief by *McLeod, Donohue, Colwin & Schuessler* of Fond du Lac, and oral argument by *Raymond R. Colwin*.

FAIRCHILD, J. 1. *Testimony as to speed.* The injuries claimed by plaintiff included a strain to the cervical spine as a result of being thrown about inside his car. Plaintiff considered that in establishing the nature and extent of his injury, he was entitled to prove the force of the impact. In order to do so, he sought to show, among other things, the speed at which Russell was traveling while still on the highway. He also showed that Russell's car left a skid mark 120 feet long on the gravel shoulder and grass lawn before reaching Millay's car. Defendants contended that Russell's speed before leaving the highway was immaterial because the speed at impact was less. The court received the testimony. We are of the opinion that the speed as well as the other circumstances could properly be considered in determining the force of the impact and whether it caused the injuries of which he complained.

The circuit court did not reverse itself on the relevancy of evidence of speed to the issue of damages, but concluded that Millay's estimate of Russell's speed had no probative value because the relative positions of the cars were similar to automobiles "traveling in opposite directions on a straightaway."

The court relied on *Fessler v. Northwestern National Casualty Co.*[1] There a witness who was driving west observed the defendant who was driving east. The witness first saw defendant when they were 200 feet apart. This court said:

"The trial court properly ruled that Seidenschnur could not be permitted to testify as to Braun's speed since he was traveling in the opposite direction and his estimate would have no probative value."

It was also noted that Seidenschnur admitted he was in no position to judge speed and could not estimate it.

[1] (1953), 265 Wis. 14, 17, 60 N. W. (2d) 387.

In a more-recent case [2] a pedestrian who was crossing a street after dark was struck by defendant's car. Plaintiff testified he first saw the car when it was 30 to 35 feet from him, and it was traveling between 65 and 70 miles per hour. This court held the testimony "'was receivable and for the jury to give it such weight as they saw fit.'" *Fessler* was distinguished because of the admission of the witness in *Fessler* that he was in no position to judge speed.

In *Maccaux v. Princl* [3] we said that one driver's estimate of another driver's speed "has little probative value, since the vehicles were traveling in opposite directions," citing *Fessler*.

, The record before us does not show with certainty that the cars were facing in opposite directions. Assuming, however, that they were, it could not be said as a matter of law that Millay's estimate of Russell's speed had no probative value even under the rule as stated in *Fessler*. Millay was stationary when he made his observation of Russell's car, and apparently relied on it in determining whether he could safely enter the highway. Millay testified, before being asked to estimate Russell's speed, that he stopped to let one car pass and then saw "another car [Russell's] approaching and I thought he was coming awful fast, so I stopped and waited for him to go by." According to Russell, the drivers could see each other when the cars were possibly 300–400 feet apart.

In the decision on file the circuit judge indicated that he had viewed the scene after the trial and relied on such view in determining that Russell was approaching from the direction opposite to that in which Millay was facing. The relative positions of the cars were not made clear in the record. Although it is conceivable that information coming to a

[2] *Albrecht v. Tradewell* (1955), 271 Wis. 303, 311, 73 N. W. (2d) 408.

[3] (1958), 3 Wis. (2d) 44, 48, 87 N. W. (2d) 772.

judge after a trial and outside the record might properly affect the exercise of his discretionary power to order a new trial in the interest of justice, this should not be the case unless (1) such information goes to the vitals of an important issue and (2) a record is made and the parties given an opportunity to refute or explain it before the new trial is ordered.

2. *Improper argument.* In the decision the circuit judge stated that the references to insurance companies by "counsel on both sides were of such a nature that they tended to inflame the jury." Although the fairness or unfairness of defendant Insurance Company or of insurance companies in general was a wholly extraneous matter and the remarks made by either counsel on that subject are not to be approved or defended, we deem them an insufficient foundation for a new trial in the absence of an expression by the court that in its opinion the verdict was higher than it would have been in the absence of these remarks.[4]

3. *The evidence appears to sustain the award.* The order for a new trial was not grounded on a finding that the verdict was excessive. In the decision the circuit court said the verdict was "high." The court's discussion of *Powers v. Allstate Ins. Co.*[5] and its conclusion that it could not employ the *Powers* rule where error occurred on the trial may have implied that the court considered it excessive. There was, however, no analysis of why the evidence could not support the $10,000 verdict.

The collision occurred September 10, 1960. Millay's car was demolished and pushed back 10 feet. He was thrown

---

[4] This court has generally held that it will not order a new trial because of the remarks of counsel unless there is an affirmative showing that actual, instead of presumed, prejudice resulted. *Bailey v. Bach* (1950), 257 Wis. 604, 44 N. W. (2d) 631, and authorities cited at page 611.

[5] (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

back and forth inside it. He was sore all over and extremely nervous. He became more nervous and consulted his family doctor, who gave him tablets. Later one hand became numb and his back pained him. X rays were taken, an orthopedic specialist was called in, and he was placed in traction in a hospital for five days. He wore a cervical collar for about two months and a surgical girdle for five or six months. He continued to have pain, particularly when lifting, at the time of trial in June, 1962.

The orthopedic specialist testified that Millay incurred a strain of the cervical spine; that he had permanent disability because of chronic recurrent pain in the upper back; and that this gives him a 10 percent disability of the body as a whole. Millay testified that at the time of the collision he had been working as a set-out operator and was earning $3.07 per hour; that he could not do the work as fast after his injury and his rate steadily went down; that he transferred to a job in a different department because the work would be easier and not cause as much pain; that he earned $2.25 per hour in this job at the time of trial. A reduction of 75 cents per hour could amount to some $1,500 loss per year. Millay was twenty-six years old at the time of trial.

We are unable to say that the evidence in the record does not sustain the $10,000 award for pain, suffering, and discomfort and for impairment of future earning capacity. A determination by the trial judge that damages are excessive is accorded great weight [6] because of the trial judge's opportunity to observe the injured person as well as to see and hear all the witnesses. Here, however, the decision does not show the reason why the circuit judge considered the verdict high, nor does the order for a new trial refer to excessive damages.

[6] *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 44, 103 N. W. (2d) 907.

The general rule is that an order for a new trial in the interest of justice will be reversed only where the trial court abused its discretion.[7] The rule does not apply, however, where the court proceeded upon an erroneous view of the law.[8] In the case before us, the court erred in its first reason stated in the order, and the second reason seems insubstantial. The damage award appears to us to be sustained by the evidence and the circuit court made no positive determination to the contrary. We conclude that it was an abuse of discretion to order a new trial.

4. *Motion for review.* Defendants claim that the circuit court erred in sustaining objections to two questions they put to plaintiff's expert. Whether or not these questions were proper on cross-examination, the doctor was permitted to answer subsequent questions covering almost the same ground. If there was error it was not prejudicial.

*By the Court.*—Order reversed; cause remanded with directions to reinstate the verdict and enter judgment thereon.

BROWN, C. J., and CURRIE and GORDON, JJ. (*dissenting*). Millay was permitted over objection to testify as to Russell's speed. The trial court treated the relationship of Millay and Russell as a head-on approach by Russell from the opposite direction. In the majority opinion it is also assumed that the two vehicles were facing in opposite directions. This court has often said that an estimate of speed has little or no probative value under such circumstances. *Maccaux v. Princl* (1958), 3 Wis. (2d) 44, 48, 87 N. W.

---

[7] *Alexander v. Meyers* (1952), 261 Wis. 384, 386, 52 N. W. (2d) 881; *McCoy v. Terhorst* (1926), 188 Wis. 512, 517, 518, 205 N. W. 420. Accord: *Kies v. Hopper* (1945), 247 Wis. 208, 211, 19 N. W. (2d) 167; *Bolssen v. Heenan* (1958), 3 Wis. (2d) 110, 116, 88 N. W. (2d) 32.

[8] *Holtz v. Fogarty* (1955), 270 Wis. 647, 651, 72 N. W. (2d) 411. Accord: *Myhre v. Hessey* (1943), 242 Wis. 638, 9 N. W. (2d) 106, 150 A. L. R. 889.

(2d) 772; *Fessler v. Northwestern National Casualty Co.* (1953), 265 Wis. 14, 60 N. W. (2d) 387; *Dahinden v. Milwaukee E. R. & L. Co.* (1919), 169 Wis. 1, 171 N. W. 669.

The majority opinion points out that such testimony was held admissible in *Albrecht v. Tradewell* (1955), 271 Wis. 303, 311, 73 N. W. (2d) 408. However, the *Albrecht Case* did not overrule the earlier decisions in express terms, although the *Fessler Case* was distinguished.

In our opinion, it is quite impossible to estimate the speed of a vehicle which is approaching head on from the opposite direction. Indeed it is extremely difficult even to determine whether such a vehicle is stopped or traveling away from one. If the witness is in a position so that he has a degree of angle with reference to a vehicle which is approaching generally from the opposite direction, his testimony as to such vehicle's speed may have value. However, when the approach is directly head on, we consider it proper for the trial judge, upon objection, to conclude that an estimate of the speed is unworthy of admission into evidence.

We are also not convinced that the trial court abused its discretion in assigning the grounds of improper argument as a basis for its having granted a new trial in the interest of justice. We can appreciate why the majority do not regard the arguments of counsel as having been so improper as to warrant a new trial. The segments of the arguments which are recited are not particularly offensive; however, the text of the arguments is not before us. Without the benefit of the exact language used, we are disinclined to find that the trial judge erred in his conclusion that the arguments "tended to inflame the jury."

The majority opinion in effect finds that the trial court abused its discretion by ordering a new trial on the ground of improper argument because of "the absence of an expres-

sion by the court that in its opinion the verdict was higher than it would have been in the absence of these remarks." Since the only issue submitted to the jury concerned damages, the trial court's very act of directing a new trial in the interest of justice, because of improper argument of counsel, necessarily implied that the jury's answer to the damage question was affected by the improper argument. If this were not so, then the trial court would not have determined that a new trial was required in the interest of justice.

In the trial court's memorandum opinion on motions after verdict the court stated:

"It is not necessary to relate in detail the complete nature of the injuries sustained by the plaintiff, except to say that the sum of $10,000 awarded for personal injuries is high. The question presents itself as to whether or not, under the circumstances herein involved, the court has the power to determine the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages."

The memorandum opinion then quoted *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, and stated that the trial court was precluded under the rule of the *Powers Case* from granting plaintiff the option of remitting the excess damages or of having a new trial when the court had committed error. This is further evidence that the court considered that the improper argument affected the jury's award of damages.

We therefore conclude that the trial judge was justified in granting a new trial, and his order should be affirmed.